Argued and submitted April 26, 1991, remanded for resentencing with instructions; otherwise affirmed August 26, state's petition for reconsideration and Wille's petition for reconsideration denied December 23, 1992, both petitions for review allowed January 22, 1993 (315 Or 311)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL PAUL WILLE,
*Appellant.*

(C890382CR; CA A62688)

839 P2d 712

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Acting Public Defender.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Brenda J Peterson, Assistant Attorney General, Janet A. Klapstein, Assistant Attorney General, and Diane S. Lefkow, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

* Joseph, C. J., *vice* Newman, J., deceased.

**DEITS, J.**

Defendant seeks reversal of his convictions for aggravated felony murder based on two counts of burglary in the first defense, ORS 163.095, ORS 164.225, kidnapping in the second degree, ORS 163.225. He assigns error to the exclusion of a psychiatrist's testimony regarding his emotional condition, to an instruction that the extreme emotional disturbance defense (EED) does not apply to aggravated murder, to the retroactive application of amendments to ORS 163.105 and ORS 163.150 relating to a sentence of life imprisonment without possibility of parole and to the entry of convictions on the felonies underlying the aggravated murder charges.

Defendant was very upset that his wife had filed for a dissolution. She was living with her mother and had obtained a temporary restraining order preventing him from entering her residence. After she filed the dissolution action, defendant told a number of people that he wanted to kill her. On February 23, 1989, he told an acquaintance from work that he should have done to his wife what he had planned to do in the first place, and he made a stabbing motion. Early that evening, defendant called his wife, who told him that she did not want to talk and hung up. He returned to work and, from there, called a friend and said that he wanted to go kill his wife. Defendant left work about 9:00 p.m. and went to his wife's residence. He kicked the door in, went in and said, "This is it." He then grabbed her and pulled her out of the house.

About 9:30 p.m., a neighbor heard a loud noise on his deck. Defendant and his wife, both covered with blood, burst through his back door. The neighbor attempted to push them out, but defendant stabbed his wife a couple of times before the neighbor managed to push him out the door and shut it. The neighbor then called 911. Another neighbor heard the commotion, came over and saw defendant slumped against a tree with deep cuts on his wrist. Defendant told him, "Don't worry about me * * * go check on my wife * * * I have just stabbed my wife * * * I have just killed my wife." The sheriff arrived, saw defendant, then entered the house and found defendant's wife dead. The medical examiner determined that she had died from a stab wound to her heart.

Defendant was charged with three counts of aggravated murder, with underlying crimes of one count of kidnapping in the second degree and two counts of burglary in the first degree. His entire defense to the murder charge was that he lacked the requisite mental state to support a conviction for murder. He filed a notice of intent to rely on EED as a partial defense. ORS 163.118(1)(b); ORS 163.135(1). He pled not guilty and was tried by a jury. The trial court advised the jury that the EED defense could reduce the crime of intentional murder to manslaughter in the first degree, but that the defense did not apply to the felony murder or aggravated murder charges. Defendant was found guilty of all offenses charged in the indictment.

■ Defendant first argues that EED, which is a defense to intentional murder under ORS 163.115(1)(a), is also a defense to felony murder under ORS 163.115(1)(b) and to aggravated felony murder under ORS 163.095(2)(d) and that the trial court erred in instructing the jury that it was not a defense to those crimes. The court instructed the jury:

"Extreme emotional disturbance does not apply to aggravated murder nor to the lesser and [sic] included offense of felony murder and it may not be used to reduce the responsibility of the defendant for either of these offenses. Extreme emotional disturbance only applies to the lesser and [sic] included offense of murder.

"* * * * *

"I instructed you earlier that extreme emotional disturbance does not apply to aggravated murder, nor to the lesser [and] included offense of felony murder and it may not be used to reduce the responsibility of the defendant for either of these offenses. Extreme emotional disturbance only applies to the lesser and [sic] included offense of murder."

■ In *State v. Atkinson*, 80 Or App 54, 57, 722 P2d 9, *rev den* 302 Or 36 (1986), we explained the differences between the kinds of homicide. What is commonly called "intentional murder" is defined in ORS 163.095(1)(a) as criminal homicide committed intentionally. "Felony murder," defined in ORS 163.115(1)(b), is criminal homicide

"committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of

the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(C) Burglary in the first degree as defined in ORS 164.225;

"* * * * *

"(E) Kidnapping in the second degree as defined in ORS 163.225."

"Aggravated murder" is intentional *or* felony murder committed under, or accompanied by, circumstances that the legislature has determined warrant enhanced penalties. ORS 163.095. A felony murder under ORS 163.115(1)(b) is "aggravated felony murder" when the accused "personally and intentionally" commits the homicide. ORS 163.095(2)(d). Thus, aggravated murder always includes intentional murder, felony murder or both as lesser included crimes.

Defendant contends that the statutes conflict as to whether the EED defense is available for felony murder and for aggravated murder. He asserts that, because "defendant is entitled to the most beneficial interpretation" of the statutes and because the legislature so intended, we should construe the statutes to allow the EED defense to felony murder and to aggravated murder.

It is not necessary to address this issue, however, because, after giving general instructions on aggravated murder and EED, the trial court instructed the jury to give a special verdict as to whether defendant had proven an EED defense:

"I instructed you earlier that extreme emotional disturbance does not apply to aggravated murder, nor to the lesser and [sic] included offense of felony murder and it may not be used to reduce the responsibility of the defendant for either of these offenses. Extreme emotional disturbance only applies to the lesser and [sic] included offense of murder.

"Notwithstanding that instruction, I am submitting to you a special verdict form which asks you to answer the following question:

"If you find the defendant guilty of the charged crime of aggravated murder in any count * * *, did the defendant prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance? Answer: There is a space for either 'yes' or 'no.'

"Please do not concern yourself as to my reason for submitting this question to you."

The jury specifically found that defendant had not proven the affirmative EED defense by a preponderance of the evidence. Defendant, therefore, could not have been harmed by the instruction that EED was not a defense to aggravated murder or felony murder. Defendant also argues that the court erred in not giving the EED defense instruction that he requested. However, the jury was properly instructed on EED under the intentional murder charge. For the reasons discussed above, even if defendant's instruction should have been given, failure to give it was harmless error.

■   Defendant next argues that, by excluding certain evidence, the trial court prevented him from presenting his EED defense and from otherwise showing that he lacked the requisite mental state to support a conviction of aggravated murder. He assigns error to the trial court's exclusion of part of the proposed testimony of Dr. Janzer, a psychiatrist, which defendant offered as relating to defendant's intent and state of mind at the time of the criminal episode.

Before the beginning of defendant's presentation of evidence, the state moved to exclude Janzer's testimony regarding his opinion about defendant's claim that he had amnesia related to the criminal episode and could not remember certain parts of it. The prosecutor told the court that he did not object to general testimony about amnesia or to testimony as to what defendant told the doctor. The prosecutor said:

"Apparently there is a significant omission on [defendant's] part regarding how the knife got into his hand and how [his wife] was stabbed. He couldn't apparently, according to the notes I received, couldn't tell Janzer what happened then. 'I don't know how the knife got in my hand and I don't know how she got stabbed.' Now, I think [Janzer] can certainly testify that [defendant] told him, 'I don't remember that stuff'; but, for that person to go further and say, 'I think

this amnesia for that short period of time is undoubtedly due to a suppression of a painful memory,' ergo, 'he's not lying when he tells me he doesn't remember.' And that's what the jury will conclude from that. And I don't think that that should be allowed under *State v. Milbradt*, [305 Or 621, 756 P2d 628 (1988),] because it's an absolute comment on the credibility of the defendant by this person."

The trial court excluded Janzer's testimony assessing the reliability of defendant's claim of amnesia. It explained that, because Janzer had to accept the validity of the defendant's statements to form his opinion, the opinion was, in effect, a comment on defendant's credibility and was inadmissible under *State v. Milbradt*, 305 Or 621, 756 P2d 628 (1988), where the Supreme Court said:

"*[N]o psychotherapist may render an opinion on whether a witness is credible in any trial conducted in this state.* The assessment of credibility is for the trier of fact and not for psychotherapists. [As set forth in *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983)], 'We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth.' An opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend * * * is tantamount to the same thing." 305 Or at 629. (Emphasis in original.)

Expert testimony cannot be excluded, however, simply because it tends "to show that another witness is or is not telling the truth." *See State v. Odoms*, 313 Or 76, 83, 829 P2d 690 (1992); *State v. Middleton*, 294 Or 427, 435, 657 P2d 1215 (1983). Janzer could have testified about amnesia generally and could have related what defendant told him and let the jury draw its own conclusions. What was excluded was Janzer's testimony that the amnesia was genuine. The only purpose that could be served by that testimony was to show that defendant was telling the truth about not remembering the stabbing, and that would constitute a comment by one trial witness on another witness's credibility. The trial court did not err by refusing to admit that testimony.

After the trial court ruled that part of Janzer's proposed testimony concerning defendant's amnesia claim was not admissible, the defense called Janzer as a witness in an offer of proof. The state then moved to exclude any testimony about his "opinion as to whether defendant was acting under

the influence of an extreme emotional disturbance" or concerning whether defendant had a personality disorder. The trial court ruled:

"And on the extreme emotional disturbance, it's the Oregon Supreme Court which states that the personality traits cannot be considered of the defendant by the jury. To me, if they're intertwined, that means they're excludable. And that means to me also that the doctor cannot testify either as to whether it was an intentional act or not, and he cannot testify that the defendant suffered from extreme emotional disturbance."

Defendant argues that the trial court erred in excluding that portion of Janzer's testimony.

The EED defense is available

"when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be." ORS 163.135(1).[1]

The evaluation of whether a person was acting under EED involves both objective and subjective factors. The action must be judged from the "standpoint of an ordinary person in the actor's situation." Evaluating the situation from the "standpoint of an ordinary person" is an objective test. However, the requirement that the evaluation involve the "actor's situation" incorporates a subjective element. *State v. Counts*, 311 Or 616, 627, 816 P2d 1157 (1991). That element allows consideration of a defendant's personal characteristics, such as age, gender and physical attributes, but not "personality characteristics." The Supreme Court has said that to allow consideration of personality characteristics in determining if a person acted under an extreme emotional disturbance

"would permit the acquittal of a bad-tempered person of murder and the conviction of an even-tempered person of

---

[1] The affirmative defense that a defendant committed a criminal homicide under the influence of extreme emotional disturbance is not a complete defense, but only a partial defense that can reduce murder to manslaughter. ORS 163.115, ORS 163.118, ORS 163.135.

murder 'in precisely the same situation and circumstances.'" *State v. Ott*, 297 Or 375, 396, 686 P2d 1001 (1984).

Describing defendant's situation, Janzer testified that, in his view, defendant's personality traits were inextricably intertwined with how he acted at the time of the crime. He said that his assessment of how defendant behaved was based in part on defendant's personality traits and that he could not comment as to what an ordinary person would have done under similar circumstances. However, under *Ott*, assessment of defendant's behavior on the basis of his personality characteristics was not appropriate in determining if defendant proved the defense. The trial court did not err in excluding that portion of Janzer's testimony.

■ ■  Defendant also contends that the uniform jury instruction regarding EED that the court used does not correctly state the law. Defendant objects to this part of the uniform instruction:

"However, you may not consider personality traits of the defendant. After determining the situation that you believe the defendant found himself to be in, you must determine whether an ordinary person in that situation would have experienced such extreme emotional disturbance that he would have lost the capacity to control himself and forego the homicide."

In reviewing jury instructions, we review for abuse of discretion and legal error. *State v. McDonnell*, 313 Or 478, 496, 837 P2d 941 (1992). The instruction that the court gave is an accurate statement of the law, and the trial court did not abuse its discretion in giving it.

■  Defendant next assigns error to the trial court's retroactive application of the 1989 amendments that added a new penalty for aggravated murder to ORS 163.105 and ORS 163.150.[2] The statute provides that the amendments apply only in trials commencing on or after July 19, 1989. Although the homicide occurred before the amendment of the statute, the trial began after that date.

---

[2] ORS 163.105 and ORS 163.150 were amended again in 1991. Or Laws 1991, ch 126, § 8; Or Laws 1991, ch 725, § 2; Or Laws 1991, ch 885, § 2. The amendments do not apply to this case.

Before the 1989 amendments, ORS 163.105 provided that a defendant convicted of aggravated murder must be sentenced to death or life imprisonment. The 1989 amendments provided a third alternative sentence: life imprisonment without possibility of parole. ORS 163.150 provides that, after a finding that a defendant is guilty of aggravated murder, the court

> "shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment * * *, life imprisonment without the possibility of release or parole * * *, or death."

In that hearing, if it seeks to have the death penalty imposed, the state must prove four facts beyond a reasonable doubt, and the jury must respond with a special verdict of yes or no on each.[3] If the jury returns a unanimous affirmative verdict on each question, the court must sentence the defendant to death. Under the pre-1989 statute, if a jury did not return a unanimous affirmative verdict, the defendant would be sentenced instead to life imprisonment to "be confined for a minimum of 30 years without possibility of parole." However, after 20 years and on a defendant's petition, the Board of Parole could hold a hearing and enter an order to "convert the terms of his confinement to life imprisonment with the possibility of parole or work release." Under the 1989 amendment, if the jury does not make an affirmative finding on every question, the defendant must be sentenced to life imprisonment *without possibility of release or parole,*

> "unless 10 or more members of the jury further find that there are sufficient mitigating circumstances to warrant life imprisonment * * *." ORS 163.150(2)(a).

---

[3] ORS 163.150(1)(b) provides:

"Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(A) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D) Whether the defendant should receive a death sentence."

The Board's ability to shorten the time of confinement has been eliminated in some cases:

> "A person sentenced to life imprisonment without the possibility of release or parole under this section shall not have that sentence suspended, deferred or commuted by any judicial officer, and the State Board of Parole may not parole the prisoner nor reduce the period of confinement in any manner whatsoever. The Department of Corrections or any executive official may not permit the prisoner to participate in any sort of release or furlough program." ORS 163.105(1)(b).

Defendant argues that the application to him of the sentence of life without parole increases the penalty for his crime and violates the *Ex Post Facto* Clauses of the United States Constitution and of Article I, section 21, of the Oregon Constitution.[4] The *ex post facto* provisions of the Oregon and United States Constitution are applied similarly. *Williams v. Board of Parole*, 98 Or App 716, 721, 780 P2d 793, *rev den* 309 Or 522 (1990) (*Williams I*). The basic definition of *ex post facto* legislation was established over 200 years ago and includes legislation that changes the law in any one of several specific ways.[5] *Collins v. Youngblood*, 497 US 37, 110 S Ct 2715, 111 L Ed 2d 30 (1990); *State v. Dufort*, 111 Or App 515, 827 P2d 192 (1992). In *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988), the Oregon Supreme Court summarized the categories:

> "Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change [*i.e.*, increase]

---

[4] Oregon Constitution, Article I, section 21, provides:

"No *ex post facto* law * * * shall ever be passed * * *."

United States Constitution, Article I, section 10, provides:

"No state shall * * * pass any * * * *ex post facto* law * * *."

[5] The specific ways were defined originally in *Calder v. Bull*, 3 US (3 Dall.) 386, 1 L Ed 648 (1798):

"1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offense, *in order to convict the offender*." (Emphasis in original.)

the punishment for those acts, or deprive the defendant of a defense for those acts."

Defendant asserts that the change in the statute increases the punishment for his crime. The state argues that the amendment is ameliorative and not more onerous than the previous version. It contends that the purpose of the statute that added the possibility of a life sentence without parole is to decrease the number of defendants who would receive the death penalty and that, therefore, under our holding in *Williams I, supra*, 98 Or at 718, punishment is not increased. In *Williams I*, an inmate argued that the application of a new Board of Parole rule for determination of his parole release date violated the *Ex Post Facto* Clauses. Holding that the change was not a violation, we said:

> "The [pivotal] question is whether the [new] 1987 rules impose a greater punishment than did the former rules. Previously, the Board could only sustain or override all of the minimum sentences. The maximum punishment, sustaining all of the judicial minimum sentences, remains the same. The key difference is that the new rules provide the Board with *more* flexibility to impose a *lesser* punishment than was imposed by the trial court. It may now override one minimum while sustaining another. The board is not required, nor does it have the authority, to impose any greater punishment than before. The amendment to the rules had an ameliorative effect on petitioner's possible punishment, rather than being more onerous." 98 Or App at 718. (Emphasis in original.)

In contrast to *Williams I*, the statute here does not increase the Board's flexibility to allow a lesser punishment than was imposed by the trial court. Additional punishment has been added, as to which neither the trial court nor the Board has any flexibility.

In *State v. Burke*, 109 Or App 7, 12, 818 P2d 511 (1991), *rev den* 312 Or 589 (1992), we summarized the situations when a change in punishment has been found to be impermissible under the *Ex Post Facto* Clauses:

> "[R]etroactive application of the law [has been found to constitute] impermissible punishment if it increased the length of time that the defendant would remain under the state's control, decreased the opportunity to have a prison

term reduced, or diminished the degree of discretion available to the sentencing judge."

The amendment here increases the amount of time that a defendant would remain in the state's control and eliminates the opportunity to have a prison term reduced. The trial court is without discretion in deciding which sentence to impose, and the statute eliminates any discretion that the Board of Parole would otherwise be able to exercise after a prisoner had served twenty years.

The state argues essentially that, because the maximum possible punishment in this case was death, no increase in the other possible penalties for aggravated murder can constitute an *ex post facto* violation. We cannot agree. Although the maximum punishment for aggravated murder is death, death is the punishment *only* if the jury returns a unanimous affirmative finding on every question under ORS 163.150(1)(b). In all other cases, including this one, the maximum possible punishment for aggravated murder under the pre-1989 statute was life imprisonment *with* the possibility of parole. The change in the statute results in a defendant receiving a sentence of life *without* the possibility of parole under circumstances that before the change could only have resulted in a sentence of life with the possibility of parole. That does not provide the Board with more flexibility, as the state contends. Instead, it results in a "reduction in [a defendant's] opportunity to have his sentence shortened [that] makes the punishment under the new rules more onerous." *Williams v. Board of Parole*, 107 Or App 515, 520, 812 P2d 443 (1991), *rev dismissed* 313 Or 300 (1992) (*Williams II*). We conclude that the amendment increases the punishment and that, therefore, application of the additional sentencing option to defendant violates Article I, section 21, of the Oregon Constitution.

■ Defendant also assigns error to the entry of separate convictions and sentences for the felonies underlying the aggravated felony murder charges. Defendant was charged with three counts of aggravated felony murder. The underlying felonies were alleged to be kidnapping in the second degree, burglary with intent to kidnap and burglary with intent to assault, but those offenses were not made separate counts in the indictment. The court instructed the jury on the

aggravated murder charges and the underlying felonies and the jury returned six guilty verdicts, three for aggravated murder and three for the underlying felonies. The court entered six convictions but, for sentencing purposes, merged the aggravated felony murders based on kidnapping and burglary with intent to assault into the conviction for aggravated felony murder based on burglary with intent to kidnap. It then sentenced defendant to life without possibility of parole on the aggravated felony murder conviction and imposed twenty-year sentences on both burglary convictions and ten years on the kidnapping conviction, all of which were to run consecutive to each other and to the life without possibility of parole sentence.

Defendant argues that, because a defendant may not be convicted of both a greater offense and a lesser included offense, it was error for the court to enter separate convictions and to impose separate sentences for the kidnapping and the two burglary convictions. The state concedes that the trial court erred in convicting and sentencing defendant on the lesser included offense of burglary with intent to kidnap, because that was the felony underlying the aggravated murder conviction for which such a sentence was imposed, and a defendant may not be punished for both felony murder and the underlying felony.

The state argues, however, that defendant's arguments concerning the entry of convictions and sentencing on the other two underlying felonies was not preserved.[6] We conclude, however, that entry of convictions on the aggravated murder charges and the underlying felonies was error apparent on the face of the record that we should address. *State v. Brown*, 310 Or 347, 800 P2d 259 (1990). Despite a correct instruction by the trial court that the jury only consider lesser included offenses *if* it could not agree on a verdict on the charged offense, the jury returned verdicts on every offense,[7] and the trial court entered convictions on all of

[6] ORAP 5.45(2) provides:

"No matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief; *provided that the appellate court may consider errors of law apparent on the face of the record.*" (Emphasis supplied.)

[7] The trial court instructed the jury:

them. Because a person may not be convicted of both aggravated felony murder and the underlying felony, *State v. Fish*, 282 Or 53, 56, 577 P2d 500 (1978); *State v. Atkinson, supra,* 80 Or App at 60, that was error. Accordingly, the trial court also erred in entering convictions for any of the underlying felonies.[8]

Finally, defendant argues that the trial court erred in imposing consecutive sentences. However, in view of our holding that the court erred in entering convictions on the underlying felonies, we need not address this issue. We also need not address defendant's assignment of error that the jury sentencing procedure under ORS 163.150(2)(a) creates an impermissible shifting of the burden of proof. That procedure applies to sentences of life without possibility of parole and, therefore, is inapplicable to this case. His other assignments are without merit.

Remanded for resentencing to life imprisonment, instead of life imprisonment without possibility of parole, and with instructions to vacate convictions and sentences for the underlying felonies; otherwise affirmed.

---

"When you deliberate you should first consider the charged offense and, if you find defendant not guilty on the charged offense, or if you cannot agree on a verdict on the charged offense, you should then consider the lesser included offenses."

[8] Although defendant and the state take different positions as to the effect of the merger of the aggravated murder convictions, neither one challenges the merger.