Argued and submitted January 31, convictions affirmed; remanded for resentencing July 10, petition for review allowed November 26, 1996 (324 Or 394)

# STATE OF OREGON,
*Respondent,*

*v.*

# WILFORD DEAN HILL,
*Appellant.*

## (CM94-20072; CA A86139)

921 P2d 969

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

De Muniz, J., concurring.

## HASELTON, J.

In an appeal from a conviction for aggravated murder, defendant assigns error to the introduction of evidence obtained through a police officer's interrogation of defendant while he was in custody and represented by counsel. The trial court considered that evidence, which concerned offenses factually unrelated to the aggravated murder, in sentencing defendant to life without parole. We remand for resentencing. ORS 138.222(5).

The facts found by the trial court are not challenged by the parties and are binding on this appeal. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). In January 1994, defendant and codefendant Cunio abducted two people in Salem, took the victims' personal property, and drove them to an isolated spot in Benton County. There, defendant and codefendant ordered the victims out of the car, shot them, and then returned to Salem and burglarized one of the victims' apartment. Defendant was arrested and incarcerated in Benton County. The trial court appointed counsel, and defendant was indicted for the crimes of aggravated murder, ORS 163.095(1)(d); ORS 163.095(2)(d), kidnaping in the first degree, ORS 163.235, and robbery in the first degree, ORS 164.415.

On March 16, 1994, Salem Police Detective Stoelk drove to Benton County to interview defendant. Stoelk had worked with officers from the Benton County Sheriff's Department on the double homicide and had participated in investigating the burglary of the victim's apartment. Stoelk knew that defendant was represented by counsel on the homicide charges but did not notify defendant's attorneys of his visit.

Stoelk went to the Benton County Sheriff's Office and told Deputy Luna, an officer assigned to the double homicide, that he wanted to interview defendant about whether he had engaged in sexual intercourse with a minor and about a shooting at an apartment that took place before the homicide. Luna mentioned to Stoelk that he was interested in defendant's gang activity and would like to know anything Stoelk learned about it.

When Stoelk began his interview with defendant, he introduced himself as a Salem police officer and told defendant that he "wanted to speak with him about some incidents in Salem." Defendant replied, "I don't really want to talk if I don't have to." Stoelk replied that that was all right, but said, "Let me advise you of your [*Miranda*] rights, first." Stoelk then told defendant that he was investigating an allegation that defendant had sex with a minor. At that point, defendant laughed and became more relaxed. Stoelk told defendant that he wanted to clear up some cases and that, because defendant was in so much trouble in Benton County, those cases probably would not be prosecuted. Defendant then said he would talk to Stoelk. In a tape-recorded statement, defendant admitted to having sexual contact with a 13-year-old girl on several occasions in Salem motels and stated that she continued to write letters to him in jail. Stoelk then turned off the tape recorder and questioned defendant about several apartment shooting incidents unrelated to the homicides. Defendant first described his participation in a drive-by shooting of which Stoelk was unaware. Defendant also discussed another incident, in which he took codefendant Cunio's gun and fired seven rounds into an apartment. At the end of the interview, defendant signed a written statement detailing the events.

Defendant waived his right to a jury and entered into a stipulation of facts sufficient to prove the charges of kidnaping, robbery, and aggravated murder. Based on that stipulation, the trial court found him guilty on all counts and proceeded to act as the factfinder in the sentencing proceeding. ORS 163.150.[1] Defendant filed a motion to suppress "all

---

[1] Defendant was sentenced pursuant to ORS 163.150(3), which outlines the procedure following a guilty or no contest plea. Here, defendant was found guilty pursuant to stipulated facts, but the procedure outlined in ORS 163.150(3) was otherwise followed:

"(3)(a) When the defendant is found guilty of aggravated murder upon a plea of guilty or no contest prior to the introduction of evidence before the trier of fact, and the state advises the court on the record that the state declines to present evidence for purposes of sentencing the defendant to death, the court:

"(A) Shall not conduct a sentencing proceeding as described in subsection (1) of this section, and a sentence of death shall not be ordered.

"(B) Shall conduct a sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment without possibility of release or parole as described in ORS 163.105(1)(b) or life imprisonment as described in ORS 163.105(1)(c). If the defendant waives all rights to a jury

evidence regarding all statements, oral and written, made to the police on or about March 16, 1994," asserting that those statements were obtained in violation of defendant's privilege against self-incrimination under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution, and in violation of defendant's right to counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. The motion to suppress was denied.

The suppression court concluded, in part:

"Officer Stoelk was interviewing the defendant solely regarding matters 'unrelated to the Benton County homicide charge.' The law in Oregon is well-established that officers have a right to interview a defendant in these circumstances even though the defendant is represented by an attorney on other charges. The case comes within the general principles of *State v. Sparklin,* 296 Or 85 (1983). In almost every case where a defendant has pending charges and has an attorney on those charges and where the defendant talks to police officers about unrelated charges, there is always a very real possibility that what he says on the unrelated charges might be used in the proceeding on the other charges for which he has an attorney—particularly in the sentencing process. As the Court reads the cases, they do not hold that because there is a possibility or even a probability that what the defendant said might be used in a sentencing proceeding in another case invalidates the interview. The finding that the Court has to make is whether the interview was 'factually unrelated' to the homicide charges. The Court makes that finding."

After receiving and considering evidence that included defendant's statements to Stoelk, the trial court sentenced defendant to life in prison without possibility of parole. ORS 163.105(b).

On appeal, defendant assigns error to the denial of his motion to suppress the statements that he made to Stoelk and evidence derived from those statements. As at trial, he

---

sentencing proceeding, the court shall conduct the sentencing proceeding as the trier of fact. The procedure for the sentencing proceeding, whether before a court or a jury, shall follow the procedure of subsection (1)(a) and subsection (2) of this section, as modified by this subsection which prohibits a sentence of death when the state declines to present evidence."

argues that his statements were obtained in violation of (1) his right to counsel under Article I, section 11, and the Sixth Amendment; and (2) his privilege against self-incrimination under Article I, section 12, and the Fifth Amendment. We consider defendant's state constitutional claims first. *State v. Kennedy*, 295 Or 260, 266, 666 P2d 1316 (1983). Because we agree with defendant that his statements were obtained in violation of Article I, section 11, we do not address his other arguments.

Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

Defendant asserts that his Article I, section 11, right to counsel had attached with regard to prosecution of the aggravated murder charge. In particular, defendant asserts that, because Stoelk knew defendant was represented by counsel but did not attempt to notify counsel of his intent to interrogate defendant, no evidence obtained from that interrogation may be used to convict, or to enhance defendant's sentence, for aggravated murder.

The state counters that the right to counsel under Article I, section 11, is offense-specific and that the constitutional prohibition against uncounseled interrogation applies only to charges factually related to the charge for which the right to counsel has attached. Thus, the state argues, Stoelk was not precluded from interrogating defendant about the statutory rape or shootings, because those crimes were unrelated to the aggravated murder.

As support for their arguments, both parties invoke *State v. Sparklin*, 296 Or 85, 672 P2d 1182 (1983). The state contends that *Sparklin* is flatly controlling. Defendant argues that, although *Sparklin* is materially factually distinguishable, its rationale dictates suppression in this case.

We agree with defendant that *Sparklin* is materially different from this case and that that difference is constitutionally significant. In *Sparklin*, the defendant was arraigned for forgery and was provided counsel for the defense of that charge. Thereafter, without notice to the defendant's attorney, the police interrogated the defendant

about a "factually unrelated" robbery and murder, and the defendant confessed to those crimes. In the ensuing prosecution for robbery and murder, the defendant unsuccessfully sought to suppress his confession, asserting, *inter alia*, that his statements had been obtained in violation of his right to counsel under Article I, section 11, and the Sixth Amendment.

The Supreme Court affirmed the defendant's convictions. In so holding, the court rejected his argument that Article I, section 11, compelled suppression of his confession:

"[O]nce a person is charged with a crime, he or she is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant. This is so whether or not defendant specifically requests an attorney's presence at the interrogation. * * *

"Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. No waiver of that right may occur until defendant has consulted with his attorney. In the smallest civil matter an attorney and his or her investigator are restricted in their contact with a represented party. We can certainly require no less of prosecutors or police in criminal matters.

"* * * * *

"It is the fairness of the 'criminal prosecution' which counsel's presence helps to insure. For this reason the Article I, section 11 right to an attorney is specific to the criminal episode in which the accused is charged. The prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes." 296 Or at 93, 95 (footnotes omitted).

■ Thus, under *Sparklin*, a defendant cannot be interrogated on matters that are "factually related" to the charges on which he or she is represented unless defense counsel is notified of the interrogation and given a reasonable opportunity to attend. Conversely, if, as in *Sparklin*, agents of the

state interrogate a represented defendant on matters factually unrelated to the charge on which the right to counsel has attached, statements thus obtained may be used in prosecuting the defendant on those unrelated matters. *See also State v. Charboneau*, 323 Or 38, 58-60, 913 P2d 308 (1996); *State v. Davis*, 313 Or 246, 261-67, 834 P2d 1008 (1992). What *Sparklin* does not explicitly address, much less resolve, is the question presented here: If agents of the state interrogate a represented defendant about matters "factually unrelated" to the crime on which the right to counsel had attached, can information thus obtained be used in prosecuting the defendant, including enhancing the defendant's sentence, on the charge for which the right to counsel had attached?

■    Although *Sparklin* does not explicitly address the issue presented here, both the state and defendant assert that it implicitly supports their contending positions. The state points to *Sparklin*'s statement that "[t]he prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes," 296 Or at 95, and reasons that, because the shooting incidents that defendant described to Stoelk were factually unrelated to the aggravated murder charge, Article I, section 11, imposes no limitations on the use of that information. Conversely, defendant relies on *Sparklin*'s description of the considerations shaping the right to counsel—the triggering of that entitlement "in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant," 296 Or at 93—and asserts that, because Stoelk obtained inculpatory information that prejudiced defendant with respect to the charge on which he was represented, Article I, section 11, compels suppression of the fruit of that interrogation for any purpose in the murder prosecution.

We agree with defendant that the considerations underlying Article I, section 11, compel suppression in this case. Our holding ultimately rests on our understanding of the contours of the right to counsel, as originally expressed by the plurality in *State v. Newton*, 291 Or 788, 636 P2d 393 (1981), and as reiterated in *Sparklin*:

"The right to counsel attaches to certain evidence-gathering processes which are deemed 'critical stages' of the prosecution as an extension of a defendant's right to representation by counsel in court. Any pre-trial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel." *Id*. at 802-03; (quoted with approval in *Sparklin*, 296 Or at 94-95).

Here, the state's position in the aggravated murder prosecution was "enhanced [and] the defense impaired due to the absence of counsel." *Id*. Without the advice of counsel, defendant provided the state with inculpatory information, which the state later offered as supporting the imposition of an enhanced sanction for aggravated murder, *viz*, life imprisonment without the possibility of parole. Moreover, regardless of Stoelk's subjective motivation,[2] it was objectively foreseeable, in the context of an aggravated murder prosecution, that evidence of defendant's participation in other crimes, particularly violent crimes, could prejudice the defense in the sentencing phase. Thus, Stoelk's interrogation was a "critical phase" for purposes of the aggravated murder prosecution. Because defendant's counsel was not notified or given a reasonable opportunity to attend the interrogation, Article I, section 11, precluded the state from offering his statement, or associated evidence, in the sentencing phase of the aggravated murder prosecution.[3]

We note, moreover, that our analysis comports with that of other courts that have considered the same question,

---

[2] The trial court found that Stoelk's "sole purpose was to interview [defendant] about whether he had sexual intercourse with a minor. * * * He had no purpose to gain information to be used in the homicide investigation or trial."

[3] The fact that the evidence was used in the sentencing phase, rather than in the guilt phase, of defendant's trial does not alter our analysis. Evidence obtained in violation of an individual's constitutional rights is not admissible in sentencing proceedings. *See State v. Swartzendruber*, 120 Or App 552, 558, 853 P2d 842 (1993); *see also* ORS 163.150(1)(a) (governing admissibility of evidence in aggravated murder sentencing proceedings: "This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Oregon").

albeit by reference to the protections of the Sixth Amendment. *See, e.g., Jackson v. State,* 643 A2d 1360, 1370-74 (Del 1994), *cert den* ___ US ___ , 115 S Ct 956, 130 L Ed 2d 898 (1995) (defendant's uncounseled inculpatory statements describing participation in murder conspiracy were inadmissible in penalty phase of prosecution for factually unrelated murder, where defendant was represented by counsel on murder charge at time he made inculpatory statements);[4] *People v. Kidd,* 129 Ill 2d 432, 136 Ill Dec 18, 24-27, 544 NE2d 704, 710-13 (1989) (defendant's uncounseled confession of involvement in arson resulting in death of 10 children was inadmissible in penalty phase of factually unrelated capital arson prosecution, where, at time police elicited confession, they knew defendant was represented on capital arson charge).

■ Our conclusion that Article I, section 11, compels suppression in this case of defendant's statements to Stoelk does not end our inquiry. The state contends that the admission of defendant's uncounseled statements constituted harmless error. We disagree. During sentencing, the trial court explicitly referred to the apartment shootings as an indication of defendant's future dangerousness. On this record, we cannot say there is little likelihood that the error affected the court's decision. *See State v. Guzek,* 322 Or 245, 270-71, 906 P2d 272 (1995); *State v. Johnson,* 313 Or 189, 201, 832 P2d 443 (1992).

Convictions affirmed; remanded for resentencing.

---

[4] In *Jackson,* the court held that suppression was consistent with the "offense specific" nature of the Sixth Amendment right to counsel:

"[T]he incriminating statements obtained from Jackson were, in fact, used against him during the sentencing phase of the Girardi murder trial, for which crimes Jackson's right to counsel had plainly attached. [*Maine v.*] *Moulton*[, 474 US 159, 106 S Ct 477, 88 L Ed 2d 481 (1985),] would permit such statements to be used at a trial for charges stemming from the Burton murder plot, but we do not read it as permitting the use of the statements at the sentencing hearing for the Girardi murder. 474 US at 180 n 16 ('Incriminating statements pertaining to other crimes as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of *those offenses.*')" 643 A2d at 1372 (*Jackson* court's emphasis).

*Accord Charboneau,* 323 Or at 59-60 (reiterating that right to counsel under Article I, section 11, is "offense-specific").

**DE MUNIZ, J.,** concurring.

The majority concludes that interrogating defendant without providing his attorney notice and an opportunity to attend violated the right to counsel under Article I, section 11, of the Oregon Constitution. Defendant was questioned on crimes apparently unrelated to the charges of aggravated murder on which he was represented. The majority reasons that it was nonetheless objectively foreseeable that information obtained could prejudice defendant in the sentencing phase of that case. I agree entirely with the majority's analysis and result, but write separately to emphasize that the nature of an aggravated murder prosecution particularly compels reversal in this case.

Throughout Detective Stoelk's interrogation, defendant faced the possibility of a death sentence. ORS 163.150. Death penalty prosecutions are inherently different from the typical criminal case and should be accorded different treatment.

> "[D]eath as a punishment is unique in its severity and irrevocability. * * * When a defendant's life is at stake, the [United States Supreme] Court has been particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 US 153, 187, 96 S Ct 2909, 49 L Ed 2d 859 (1976) (plurality opinion).

The safeguard at issue here is the right to counsel under Article I, section 11, of the Oregon Constitution.[1] As the Oregon Supreme Court has interpreted that provision, "[o]nce an attorney is appointed or retained, there can be no interrogation of a defendant concerning *the events surrounding the crime charged* unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983) (emphasis supplied).

When Stoelk questioned defendant about a statutory rape and a shooting at an apartment, the detective knew that defendant had been appointed counsel on charges of

---

[1] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

aggravated murder stemming from two other homicides. The state at that time had not yet decided to forgo the death penalty in those cases,[2] and defendant continued to face the possibility of execution. To obtain a sentence of death, the state had to prove more than the elements of aggravated murder under ORS 163.095(1)(d) and 163.095(2)(d). It was also required to secure, beyond a reasonable doubt, the jury's affirmative response to each of the four questions under ORS 163.150(1)(b). *State v. Montez*, 309 Or 564, 613, 789 P2d 1352 (1990); *State v. Wille*, 115 Or App 47, 56, 839 P2d 712 (1992), *aff'd* 317 Or 487, 858 P2d 128 (1993).

ORS 163.150(1)(b) provides:

"Upon the conclusion of the presentation of the [penalty phase] evidence, the court shall submit the following issues to the jury:

"(A)   Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B)   Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C)   If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D)   Whether the defendant should receive a death sentence."

Typically, "future dangerousness" under ORS 163.150-(1)(b)(B) is the pivotal issue at the sentencing phase of a death penalty case. The most common way of proving that prong is through evidence of the defendant's other criminal conduct.[3] That conduct therefore becomes essential to the

---

[2] Stoelk interrogated defendant on March 17, 1994. According to the record, the prosecutor sent defense counsel a letter dated April 19, 1994, "to confirm that the state will not be seeking a death penalty in this case." There is no other evidence in the record indicating whether the state had decided not to pursue the death penalty earlier.

[3] *See State v. Tucker*, 315 Or 321, 337, 845 P2d 904 (1993) (supporting broad use of defendant's "prior criminal conduct" under ORS 163.150(1)(b)(B)); *State v.*

state's aggravated murder case. As such, interrogating defendant here about his sexual relationship with a minor and his involvement in a different shooting concerned "events surrounding the crime charged," *i.e.*, aggravated murder.

It makes no difference that the state *later* chose not to pursue the death penalty. It is the time of interrogation that is relevant, and at that time defendant faced a death sentence. In such instances, it is not only the courts, but also the police, who should "insure that every safeguard is observed." *Gregg*, 428 US at 187. By conducting an interrogation without providing defendant's attorney with notice and a reasonable opportunity to attend, Stoelk violated defendant's right to counsel under Article I, section 11.

---

*Williams*, 313 Or 19, 43, 828 P2d 1006, *cert den* 506 US 858 (1992) (defendant's arson activities and threats relevant to prove future probable violent behavior); *Montez*, 309 Or at 611 (defendant's confession of prior crimes relevant under ORS 163.150(1)(b) and thus admissible in penalty phase); *State v. Moen*, 309 Or 45, 73, 786 P2d 111 (1990) (even unadjudicated criminal acts are relevant under ORS 163.150(1)(b)(B)).