Argued and submitted August 31, 2005, affirmed December 6, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# J. W. MCBETH,
*Appellant.*

## 03FE0054; A122304

149 P3d 212

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

ARMSTRONG, J.

---

* Rosenblum, J., *vice* Ceniceros, S. J.

**ARMSTRONG, J.**

Defendant appeals his conviction of two counts of witness tampering. ORS 162.285. He assigns error to the trial court's admission of a witness's state-of-mind testimony about why she feared defendant, on the ground that the evidence was irrelevant. OEC 401. We review the court's determination of relevance for legal error, *State v. Titus*, 328 Or 475, 481, 982 P2d 1132 (1999), and affirm.

Because the jury found defendant guilty, we consider the facts in the light most favorable to the state. *State v. Langley*, 314 Or 247, 249, 839 P2d 692 (1992). At the time of the events leading to the criminal charges against defendant, defendant knew that Ward, a long-time associate of his, faced criminal charges for delivery of a controlled substance. Those charges were brought after Cutsforth, a mutual acquaintance of Ward and defendant, conducted a controlled buy of methamphetamine from Ward. Defendant, Ward, and Cutsforth are all long-time residents of Prineville.

Ward was arrested and charged, and the state subpoenaed Cutsforth to testify in the criminal proceeding. Early one morning, shortly after Cutsforth received the subpoena, defendant stopped by the hotel room where Cutsforth lived. After Cutsforth and defendant talked and defendant left, Cutsforth telephoned the sheriff's officer whom she knew from the controlled buy transaction. She told him that defendant had shown up and scared her, and that the visit was "repercussion" for the controlled drug buy. Although Cutsforth was frightened by defendant's visit, she ultimately testified at Ward's trial.

The state charged defendant with unlawfully attempting to induce Cutsforth not to testify against Ward. Defendant was charged under ORS 162.285(1)(a) and (b) with one count of attempting to induce a witness to unlawfully withhold testimony and one count of attempting to induce a witness to be absent from an official proceeding to which she was legally summoned. ORS 162.285 provides, in part:

"(1) A person commits the crime of tampering with a witness if:

"(a) The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony; or

"(b) The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned."

The state called Cutsforth as a witness against defendant in his witness-tampering trial. She admitted to being a methamphetamine user. She testified that she had known Ward for 15 years and defendant for about a decade. Concerning defendant's visit to her hotel room and their conversation, Cutsforth testified to the following facts. Defendant asked Cutsforth what she knew about Ward's arrest, and she told him about her involvement in the controlled buy. She told defendant that she was afraid to testify in Ward's trial. Defendant replied that it was "easy to forget things and not to recollect and not to show up to court." Cutsforth told defendant that she feared going to jail for contempt if she did not appear, they talked a little while longer, and then defendant left. The prosecutor asked whether Cutsforth had been afraid of defendant at the time. When she said that she had feared him, the prosecutor asked her to explain the basis of her fear. Defendant objected to Cutsforth's answer to that question on grounds of relevance, hearsay, lack of reliability, and improper prior-bad-acts testimony. The trial court admitted Cutsforth's answer as state-of-mind evidence, preceded by a cautionary instruction that the evidence was not being asserted for the truth of her statement.[1] Cutsforth then answered the prosecutor's question, testifying that she was afraid of defendant "because of rumors. Because of a few other associates of mine. That he was involved in a few murders here in town."

---

[1] The trial court relied on the hearsay exception found in OEC 803(3), which provides, in part:

"The following are not excluded [as hearsay], even though the declarant is available as a witness:

"* * * * *

"(3) A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health * * *."

Defendant also testified. He admitted to a criminal record that included convictions for possession of a controlled substance in 1990 and 1996; for theft in 1995 and 1996; and for attempted assault in 2001. He testified that the jury should not believe anything he said because "I am not a choir boy," that he had been guilty of a crime most of the times that he had been arrested, and that he had served four prison sentences. In answer to a question about how he was employed, defendant responded, "[M]ost of the time I am a criminal."

In his trial testimony, defendant described a different version of his interaction with Cutsforth. He visited her hotel room by chance because he saw her father's car in the hotel parking lot as he walked to a friend's house. Cutsforth told him that she was unhappy with the police for allowing her name to be "on the street" in connection with Ward's case. She asked defendant what she could do to avoid testifying, and she said that she might "split town." Defendant responded to her concerns by warning her that she could face contempt of court and jail time if she ignored the subpoena. He also testified that he did not threaten Cutsforth, did not imply that she would be hurt if she testified, and did not tell her to avoid going to court. Nonetheless, the jury convicted defendant of both counts of witness tampering.

■ Although defendant advanced four theories at trial for his objection to the admission of Cutsforth's statement about why she feared defendant, he argues on appeal only that the evidence was irrelevant. OEC 401. Defendant first contends that the evidence was not relevant because witness tampering does not require proof of an intent to scare the witness. He argues that Cutsforth's statement explaining her fear was unrelated to the issues at trial because whether she was scared or had reason to be scared is not an element of the crime. Alternatively, defendant contends that Cutsforth's reasons for fearing defendant might have been conditionally relevant, but were admissible only if other evidence supported the theory that he had used his reputation as a violent person to induce Cutsforth not to testify. *See* OEC 104(2).[2] He

---

[2] OEC 104(2) provides:

"When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

argues that the state did not present other evidence that suggested that defendant had used his reputation to induce Cutsforth not to testify. Finally, defendant contends that evidence of a reason for Cutsforth to be fearful would have been relevant if she had failed to testify in Ward's trial, but was irrelevant because she did in fact testify against Ward. We conclude that relevance is generally a simpler concept—and simpler on these facts—than defendant contends, and that the threshold of relevance is lower than defendant posits.

■■   OEC 401 defines relevant evidence to be "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The rule establishes a "very low threshold" for the proper admission of evidence. *State v. Hampton*, 317 Or 251, 255 n 7, 855 P2d 621 (1993). To be relevant,

> "[t]he proposed inference need not be necessary, or even the most probable inference; the evidence need not be sufficient in and of itself. Evidence comes in item by item, and every witness does not have to hit a home run!"

■■   *Id.* at 255 n 8 (internal quotation marks and citation omitted). Furthermore, "evidence may still be relevant even though it [i]s only an *intermediate* fact requiring another inference or two." *Id.* at 255 (emphasis in original). A trial court's determination of relevance under OEC 401 can yield only one correct answer: Evidence is either relevant or it is irrelevant. *Titus*, 328 Or at 481. Irrelevant evidence is inadmissible. OEC 402.

First, we do not see that this case presents a question of conditional relevance. As the Supreme Court has said, in general, relevant evidence "need not be sufficient in and of itself" and it "comes in item by item." *Hampton*, 317 Or at 255. Defendant's argument as to conditional relevance fails in part because of his incorrect contention that there was no other evidence to suggest that defendant had used his reputation to induce Cutsforth not to testify. Cutsforth had known defendant for about a decade, during which time he was convicted of a violent crime (the attempted assault in 2001) and served prison sentences. Defendant himself testified that he was "not a choir boy" and that he generally

earned his livelihood as a criminal. All of this was other evidence permitting inferences that defendant's reputation was not good, that his reputation was known to Cutsforth and to himself, and that his reputation influenced Cutsforth's reaction to his visit.

■ More significantly, defendant does not cogently identify a necessary factual condition that the state first had to fulfill to support the theory that defendant used his reputation to induce Cutsforth. "Conditional relevancy means a situation where one fact is relevant only if another fact is proven." *State v. McNeely*, 330 Or 457, 462 n 5, 8 P3d 212, *cert den*, 531 US 1055 (2000) (citation omitted). Here, the state's case relied on the logic of reasonable inferences rather than a prerequisite condition of fact and, with respect to relevance, "the proposed inference need not be necessary, or even the most probable inference." *Hampton*, 317 Or at 255.

■ We next consider defendant's primary argument, namely, that Cutsforth's statement about the reason for her fear was irrelevant because an intent to induce fear in the witness is not an element of the crime of witness tampering. However, it is well settled that, to be relevant, the evidence under consideration by the court and the fact that it makes more or less probable may both be *intermediate* facts. *See Hampton*, 317 Or at 255 (stating principle that relevant evidence may require another inference or two).

■ Here, an explanation to support the reasonableness of Cutsforth's reaction to defendant's visit and to what he said to her exceeded the necessary threshold of "having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable." OEC 401 (emphasis added). First, the state was required to prove that defendant "attempt[ed] to induce" the witness, as ORS 162.285 states. An attempt to induce may be carried out by instilling fear or attempting to instill fear in the witness. On that theory, Cutsforth's reason to be fearful as a result of a single potentially innocuous conversation between herself and defendant would have a tendency to make it more probable that defendant had sought to induce Cutsforth not to testify. Second, the disparities in Cutsforth's and defendant's testimony created an issue of credibility for the jury, which

had to decide whether to believe Cutsforth or defendant. The witness and defendant each simply put their own versions of the conversation in the other's mouth. Both were impeachable given their backgrounds.

■     The state's effort to show why Cutsforth experienced a fearful reaction was relevant both to the jury's necessary determination of her credibility and to the theory that defendant had used his presence and reputation to help induce fear in Cutsforth and thereby to discourage her from testifying. Evidence is relevant so long as the inference that the proponent of the evidence desires the factfinder to make is reasonable. *Hampton*, 317 Or at 255. Other evidence related to Cutsforth's statement included the undisputed facts that she knew that Ward and defendant were associates and that she did not expect defendant's visit, which occurred at an early morning hour when she was alone in her hotel room. Those facts, taken together with Cutsforth's reason to fear defendant based on rumors about his reputation, could permit the jury reasonably to infer that Cutsforth credibly interpreted defendant's visit to be "repercussion" for her assistance to authorities and that defendant did in fact attempt to induce Cutsforth to withhold testimony or not to appear at trial. The accumulation of the testimony was a classic instance of evidence that "comes in item by item." *See Hampton*, 317 Or at 255.

Furthermore, in this case, Cutsforth's testimony was relevant to prove the *mens rea* element of "knowingly" by reasonable inference. *See* ORS 162.285(1)(a) and (b). Cutsforth's statement of how and what she knew about defendant's reputation, combined with defendant's own testimony that he routinely worked in criminal pursuits, had a tendency to support the jury's reasonable inference that defendant knew that Cutsforth had reason to fear him. In turn, that permitted the jury's reasonable inference that defendant *knowingly* attempted to use his reputation to instill fear in Cutsforth to induce her to withhold testimony or to not appear.

■     Finally, we briefly address defendant's contention that Cutsforth's statement about her reason to be fearful was irrelevant because she did in fact testify against Ward.

Defendant concedes in his primary argument that the crime of attempting to tamper with a witness does not require that a person either induce or attempt to induce *fear* in the witness. The crime requires that a person attempt to induce a witness *to modify her behavior*, that is, to decide not to testify or to be absent from a proceeding. ORS 162.285. As we have observed, a witness's inducement to modify her behavior may be instilled by fear. For the many reasons that we have discussed above, Cutsforth's explanation of why she was fearful was relevant. Nothing about the nature of proving that defendant tried to commit witness tampering made Cutsforth's statement irrelevant merely because that attempt to tamper was unsuccessful.

Cutsforth's testimony about a reason for her fearful state of mind was logically relevant because it had a tendency to make the existence of facts of consequence to the determination of the action, that is, the outcome of defendant's trial, more probable. The trial court did not err in admitting the witness's testimony over the relevance objection.

Affirmed.