Argued and submitted March 26, reversed and remanded September 24, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVE MARTIN SACRE,
*Defendant-Appellant.*

Linn County Circuit Court
03040827; A128422

193 P3d 70

Mary M. Reese argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Carson, Senior Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals convictions for unlawful possession of a short-barreled shotgun, ORS 166.272, pointing a firearm at another, ORS 166.190, menacing, ORS 163.190, unlawful use of a weapon, ORS 166.220, robbery in the first degree, ORS 164.415, and theft in the third degree, ORS 164.043. On appeal, he argues that the trial court erred in failing to suppress an audio recording of certain statements that he made during an unrelated criminal trial while being questioned as a witness. Defendant contends that the statements were not relevant and, even if they were relevant, that they should not have been admitted because they were obtained in violation of his state and federal constitutional right to counsel. Although we conclude that the statements were relevant, we nevertheless conclude that admitting them violated defendant's right to counsel because the statements were made in response to questions posed by the state that foreseeably could have elicited incriminating responses. Accordingly, we reverse.

The facts are not disputed. A masked man carrying a sawed-off shotgun entered a convenience store, pointed the gun at the clerk, and told her to give him all the money. The clerk described the man as having a "low, kind of gruff" voice. He held the shotgun stock with his right arm while supporting the barrel with the upward-facing palm of his left hand. The clerk handed the robber the money, and the robber left the store.

A witness saw the robber leave the store and followed him. He saw the robber jump into the passenger side of a pickup truck, which the witness believed contained a second person. As the pickup drove away, the witness noted the license plate number and reported it to police.

Later that day, an officer saw a pickup displaying the license plate noted by the witness pull into the driveway of a house. Daniel Edmunson was in the pickup, and defendant was inside the house. Both Edmunson and defendant were arrested in connection with the robbery. Police searched the pickup and discovered a 12-gauge sawed-off shotgun in the back seat.

Sometime after the robbery, the store clerk listened to a police tape recording of defendant and Edmunson using the same phrases the robber had used. The clerk identified defendant's voice as that of the robber. Three weeks after the robbery, Edmunson, who was incarcerated, asked to speak to detectives and implicated defendant. Defendant was subsequently indicted.

While the charges against defendant were pending, he testified as a witness for the state in *State v. Yancey*,[1] in which Yancey evidently had been charged with offenses related to some stolen appliances. Although defendant was at that time represented by counsel on the charges arising from the robbery in this case, nothing in the record indicates that the state notified his counsel that defendant would be called as a witness in the *Yancey* trial or that counsel was present during his testimony.

Defendant testified that he and Yancey had helped Yancey's girlfriend move. The prosecutor asked him if he remembered what kind of things they were moving. Defendant initially said that he could not remember anything that was put in the truck that they used for the move. The prosecutor returned to the point a few minutes later, asking, "And you don't recall one single item that you helped move out of there?" He replied, "Honestly, not one. I picked up a couple of boxes of clothing, I think, I might have." The prosecutor later asked, "Do you remember any large appliances being in the truck?" Defendant said, "No. I never even looked in that truck I don't believe except to maybe throw a box in there."

The prosecutor later asked defendant about statements he had made to a police officer about the events of that day:

"Q.  Do you recall telling him that the three of you moved the things out of the apartment and that you moved appliances and all sorts of stuff?

"A.  I said appliances?

"Q.  Do you recall saying that?

---

[1] *State v. Yancey* and this case were both filed and tried in Linn County.

"A. No. I remember moving some boxes, a couple of boxes. I think I put two boxes in the truck."

When defendant continued to deny recalling having told the officer about appliances, the prosecutor asked the following questions:

"Q. Alright. Did you have a conversation with me this morning where you said—

"A. Yes. Out here.

"Q. —that you were afraid to go to prison and be labeled as a narc?

"A. Well, you under—yeah, that's quite right. I'm facing a sentence that's going to put me away for the rest of my life. You want me to come here and testify against somebody that's already in prison.

"Q. Is that affecting your memory then?

"A. No, it's not affecting my memory. I tried to tell that to [the officer] yesterday.

"Q. Didn't you make a statement to [the officer] yesterday that—

"A. I told him I'd be here.

"Q. You gave him more information than you're giving right now, didn't you?

"A. No. Well, I said, 'Yeah, I helped the guys move.' That's all I really know. I helped them move and I threw some boxes in the truck, ma'am."

The trial in this case occurred thereafter. Defendant waived his right to a jury and the case was tried to the court. Defendant called Dr. Jerry Becker, an orthopedic surgeon who had operated on defendant for advanced osteoarthritis.[2] Becker testified that, as a result of the surgery, defendant cannot extend his arms in front of him with his palms facing up (as the clerk had described the robber doing to hold the shotgun barrel), although he is able to reach down, lift, and move things such as boxes.

---

[2] Becker was called before the state rested its case-in-chief for the convenience of the witness.

After Becker testified, the state sought to introduce the audio recording of defendant's testimony in the *Yancey* trial as evidence of defendant's ability to use his arms, as an exemplar of his voice, and as evidence of his "guilty knowledge" because one could infer from the testimony that defendant believed that he would be convicted of the charges relating to the robbery. Defendant objected to the admission of the recording as irrelevant. The court ruled that the recording was relevant as an exemplar of defendant's voice[3] but declined to rule on whether the evidence was admissible for other reasons until after defendant presented his case.

After defendant presented the remainder of his case, the state sought to admit the recording to rebut evidence that defendant could not use his arms as the robber had. Defense counsel again objected, arguing that defendant's testimony in *Yancey* that he moved some boxes was not contrary to Becker's testimony and therefore could not rebut it. The trial court ruled that the evidence was admissible as relevant to defendant's physical ability.

■■ Defendant also objected to the court considering the recording as evidence of his guilty knowledge. The prosecutor contended that the statement was a tacit admission of guilt because defendant had said that he was facing charges that were "*going to* put me away for the rest of my life." Defendant responded that it was not clear that he had been referring to the charges arising from the robbery and that, in any event, the testimony from the *Yancey* trial was elicited in violation of his right to counsel. The trial court admitted the recording, reasoning:

> "In this case, I think, having listened to the tape to hear the context of the discussion, the fact that he was under oath in an official court proceeding and he made this statement, he doesn't say that 'I might go to prison' or 'I could go to prison' he says "I'm—that's gonna put me away for the rest of my life,' so the statement in and of itself does have some value.
>
> "* * * [H]e was there as a witness, not a defendant. In that case, is it fair that we now use his statements against

---

[3] Defendant does not challenge the court's ruling that the recording was admissible as a voice exemplar.

him in a different proceeding having not been given *Miranda* and * * * the Court emphasized he didn't have an attorney to advise him either, and that's—that is a really tough issue. I think if you asked ten judges, you might get five and five on it or something, but I'm—in the absence of any further opportunity to research or look at cases or whatever, I think it is an admission, and I am going to receive it. * * * [T]he indicia of reliability being in a court setting and the fact that he wasn't prompted to make the statement, nobody was trying to trick him into making an admission about some other different case, he blurts out in the context of how he didn't want to be a snitch in testifying in that other case, how dangerous it would have been to be a snitch, so I—balancing everything and trying to keep mind of all the Evidence Code provisions that I can think of, I think it is an admission and I do accept it."

The trial court found defendant guilty based in part on the statement by defendant in the *Yancey* trial, stating:

"[W]hen you take that statement 'I've got a sentencing coming up that's gonna send me to jail for the rest of my life,' when you put it in context with everything else that I've got here, the store persons identifying his height, * * * you've got the voice identification, and we have those two things, I'm—I'm saying that I do find the defendant guilty."

On appeal, defendant contends that the trial court erred in admitting the recording of his testimony about moving boxes and his facing a sentence that is "going to put me away for the rest of my life" because the statements were not relevant and, alternatively, because the statements were obtained in violation of his right to counsel under the state and federal constitutions. We review the trial court's determination of relevance under OEC 401 for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Similarly, we review whether the state violated defendant's right to counsel for errors of law.

We begin with defendant's argument that the trial court erred by admitting his statements because they were not relevant. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Defendant argues that his statement about moving boxes was not relevant because it did not refute Becker's testimony that, although defendant is able to reach down, pick up boxes, and carry them, he cannot extend his arms in front of him with his palms facing up. Defendant argues that his statement about facing a sentence "that's going to put me away for the rest of my life" was not relevant because it is not clear that defendant was referring to the charges arising out of the robbery and, even assuming that he was referring to those charges, "[a]dmitting that one is facing trial and a potentially long sentence on criminal charges is not the substantive equivalent of admitting guilt to those charges."

Relevance under OEC 401 has a "very low threshold." *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000). Evidence need only "slightly" increase or decrease the probability of the existence of a fact of consequence. *Id.* The inference to be drawn from the evidence need not be necessary, or even the most probable inference; if the evidence or the inferences reasonably drawn from the evidence make the existence of a fact of consequence *any* more or less likely, the evidence is relevant. *State v. McBeth*, 209 Or App 546, 551, 149 P3d 212 (2006).

That standard was met here relating to moving boxes. Defendant testified that he "thr[e]w" a box into the truck and "put two boxes in the truck." A reasonable finder of fact could infer from that statement that defendant had extended his arms with his palms up to place the boxes in the truck and, therefore, could have held the shotgun barrel as the clerk described. Those are, of course, not the only possible inferences. Indeed, they may not be the most probable ones, especially in light of the testimony of Becker. But they are reasonable inferences to draw, and the evidence that defendant had moved and thrown multiple boxes was therefore relevant to show that defendant had sufficient range of arm and shoulder movement to hold the shotgun as the clerk described. The evidence was thus admissible to rebut the defense theory that defendant could not hold the shotgun as

described. Accordingly, the trial court did not err by concluding that defendant's testimony that he had moved boxes was relevant.

■     Defendant's statement that he was facing a sentence "that's going to put me away for the rest of my life" was also relevant. Defendant contends that the statement is not the substantive equivalent to an admission of guilt. That may be true, but the argument goes to the weight that a finder of fact should give the evidence, not its admissibility. A reasonable finder of fact could infer from defendant's use of the phrase "going to" that defendant believed that he would be convicted because he was guilty. Thus, the statements were relevant and the trial court did not err in admitting them under OEC 401.

■     We turn to whether the trial court erred in admitting the statements because they were obtained in violation of defendant's right to counsel under Article I, section 11, of the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 265, 666 P2d 1316 (1983) (courts address state constitutional claims before federal constitutional claims). Under Article I, section 11, "once a person is charged with a crime[,] he or she is entitled to the benefit of an attorney's presence, advice, and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against [the] defendant." *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983). The plurality in *State v. Newton*, 291 Or 788, 802-03, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*, 305 Or 59, 750 P2d 147 (1988), quoted with approval by the majority in *Sparklin*, 296 Or at 94-95, explained that

> "[t]he right to counsel attaches to certain evidence-gathering processes which are deemed 'critical stages' of the prosecution as an extension of a defendant's right to representation by counsel in court. Any pre-trial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel."

If it is objectively foreseeable from the totality of the circumstances that the state's questioning could elicit responses that would enhance the state's case or impair the defense, the defendant's counsel must be given notice and a reasonable opportunity to attend the questioning. *See State v. Hill*, 142 Or App 189, 197, 921 P2d 969 (1996), *rev den*, 327 Or 521 (1998). If counsel is not notified and given a reasonable opportunity to attend, the state is precluded from using the defendant's statements in prosecuting the defendant on the charges for which the right to counsel had attached. *Id.*

At the *Yancey* trial, defendant, without the benefit of counsel, provided the state with information that enhanced the prosecution in this case. It was objectively foreseeable that the prosecutor's question whether defendant had stated earlier that he was "afraid to go to prison and be labeled as a narc" could elicit defendant's incriminating statement, "I'm facing a sentence that's going to put me away for the rest of my life."

Because it was objectively foreseeable that the state's questioning of defendant in the *Yancey* trial could elicit a response that would enhance the state's case, his examination there was a "critical stage" for purposes of this prosecution. Thus, defendant was entitled to have counsel present. *Newton*, 291 Or at 802-03. Given that the state has not established that defendant's counsel was notified and given a reasonable opportunity to attend defendant's examination in the *Yancey* trial, the state was precluded from offering his incriminating statements from that trial, including those pertaining to the boxes, as evidence in this case. It follows that the trial court erred in admitting the statements.[4]

Reversed and remanded.

---

[4] Because we conclude that defendant's right to counsel under Article I, section 11, was violated, we need not address defendant's federal constitutional argument.