Argued and submitted March 1, decision of Court of Appeals and judgment of trial
court reversed and case remanded to trial court for new trial May 17, 1988

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DONALD D. MILBRADT,
*Petitioner on Review.*

## (CC 85-1156; CA A42497; SC S34731)

756 P2d 620

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander & McCann, Salem, argued the cause for petitioner on review. Bernt A. Hansen, McMinnville, filed the petition for review.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

## JONES, J.

Defendant claims four assignments of error in his petition to this court. The Court of Appeals affirmed without opinion his convictions for attempted rape and attempted sexual abuse. *State v. Milbradt,* 88 Or App 471, 745 P2d 827 (1987). We reverse the decision of the Court of Appeals and remand the case for a new trial.

Defendant, a school bus driver, drove the two alleged victims, ages 19 and 20, to and from a school for mentally retarded persons. He also invited the alleged victims to his home, where they occasionally stayed overnight with the defendant and his wife.

Defendant originally was charged with ten counts of rape in the second degree involving instances of sexual conduct with each of the two mentally retarded young women. The trial court sustained demurrers to eight of the ten counts. The jury found defendant guilty of lesser included offenses on the remaining counts.

### COMPETENCY

Defendant claims that the trial judge erred in making his determination that the two alleged victims were competent to testify at the trial.

The trial judge conducted a hearing outside the presence of the jury and, after listening to a psychiatrist and a psychologist and questioning the two young women, commented:

"I don't think, however, that it is my function as Judge to determine the quality of the perception * * * or the quality of the recollection, or the quality of the ability to relate. In other words, I think that I have to be able to say I am satisfied completely in my own mind that ability to perceive *does not exist here,* or the ability to have a good recollection of the perception does not exist here, or any of those things." (Emphasis added.)

The trial judge then concluded that the young women were competent to testify.

In doing so, the trial judge did not err. OEC 601 provides:

"Any person who, having organs of sense can perceive, and

perceiving can make known the perception to others, may be a witness."

Whether a witness's ability to perceive and communicate is sufficient to make the witness competent under OEC 601 is an issue for the court to determine under OEC 104(1).[1] The unofficial commentary to OEC 601 reads:

"Whether any person has sufficient ability to perceive, recollect and communicate so it is worthwhile for the person to testify is a question for the trial court to decide in the exercise of sound discretion. This is clearly recognized in the case of mental capacity."

The advisory committee note to FRE 601, upon which the Oregon rule is based, states:

"No mental or moral qualifications for testifying as a witness are specified. Standards of mental capacity have proved elusive in actual application. A leading commentator observes that few witnesses are disqualified on that ground. Weihofen, Testimonial Competence and Credibility, 34 Geo. Wash. L. Rev. 53 (1965). Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence. (2 Wigmore, §§ 501, 509)." Kirkpatrick, Oregon Evidence 209 (1982).

■■ In this case, there is no question but that the two young women were suffering from severe mental retardation and had great difficulty recalling and relating the times of the alleged assaults. Nevertheless, they satisfied the basic four requirements for competency. To be deemed competent a witness must (1) have the capacity to perceive and perceive (OEC 601); (2) have capacity to recall and recollect the impressions of fact perceived (OEC 601); (3) have the capacity to communicate and communicate (OEC 601); and (4) have taken an oath or affirmation to testify truthfully (OEC 603). Although one of the psychotherapists opined that one of the witnesses,

---

[1] OEC 104(1) provides:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."

Vickie, was not *credible* at all, — and we will deal with the evidentiary implications of such an opinion later — he could not say that she was not *competent* to testify. He observed that the other victim, Rose, was easily malleable and vulnerable to suggestion, but did not seriously question her competence.

The trial judge correctly ruled that he should not determine the credibility of the witnesses. So long as the witnesses possessed capacity to perceive and communicate factual matters and understand that they were under an obligation to tell the truth, they were sufficiently competent to testify.

## CREDIBILITY

Defendant's second assignment of error complains that the trial judge erroneously admitted the testimony of Dr. Farrenkopf, a psychologist called by the state. This witness testified that when interviewing the young women regarding their accusations he found no evidence of deception and that what they were reporting represented their experience. Dr. Farrenkopf testified:

"Q. [BY PROSECUTOR] To summarize then, Doctor, these tests allowed you to arrive at an I.Q. score of what?

"A. With Vickie, I categorized her in the severely retarded range of mental deficiency of about, I.Q. of about 25.

"* * * * *

"Q. In your contact with Vickie Fernleaf to what extent did you see evidence of deception?

"[DEFENSE ATTORNEY]: I am going to object to this line of evidence. I think it gets to impermissible areas of comment by the psychologist.

"THE COURT: You got to come again. I am not sure that I understand your objection.

"[DEFENSE ATTORNEY]: His question was to what extent did you see signs of deception. I think the question of whether the witness showed signs of deception is beyond the function and scope of an expert witness in this area.

"THE COURT: Well, I don't know, because there hasn't been any foundation on that particular point as yet. So, I would sustain an objection to that question because of a lack of foundation.

"[DEFENSE ATTORNEY]: I would change then the basis of my objection.

"Q. (By Prosecutor) Doctor, you have indicated that part of your training as a psychologist is to be a trained observer, is that correct?

"A. That is correct.

"Q. Have you in your training and education as a psychologist found there to be certain indicators of deception?

"A. Certainly in my experience with criminal justice clients over the past five, six years, that is one of the things I look for.

"Q. Were you able to arrive at opinions or observations in that regard with respect to Vickie Fernleaf?

"A. Yes, I was.

"Q. And what was that based on?

"A. Based on her demeanor, on how she answered questions, the content of her answers. I could go into her spontaneity, among other things. She was spontaneous with freshness in answering the questions.

"Q. I would ask the question again. To what extent, in your evaluation of her, did you see evidence of deception?

"[DEFENSE ATTORNEY]: And I object again, Your Honor.

"THE COURT: No, I am going to overrule the objection. You can test all of this on cross examination, [defense counsel].

"Q. (By Prosecutor) To what extent did you see evidence, or indicators of deception?

"A. I did not. She seemed to take every question and answer it as she was, answer spontaneously on the moment with no indication of hesitation, or figuring out what the best answer might be. You know, she would just blurt things out, which is unpremeditated response. So, kind of a very fresh and spontaneous approach to me.

"Q. Were there any other observations that you made regarding the presence or absence of deception?

"A. By deception, we mean purposefully deceiving, or changing things?

"Q. Yes.

"A. I did not see any evidence of that. That is not to say everything she said must be accurate. But it seemed to me to

be no attempt on her part to change things around, say things differently than the way she felt. And she said things with an exuberance, and emphasis, like, you know, she wanted to do well, and say the answer, and do the right thing, and here it is, you know. None of the mannerisms of somebody that is cagey and guarded and careful.

"* * * * *

"Q. To what extent would Vickie's limited mental capacity impair her ability to be deceptive?

"A. Again, I find her condition of her mental defect as directly related to rendering her unsophisticated to either plan a systematic or motivated deception, or carry it through. She was so spontaneous if she, this is my opinion, if she lied, that she would trip herself up five minutes later, you know.

"* * * * *

"Q. Does her limited mental capacity impair her ability to betray someone she perceives to be a friend?

"A. I would not think she would have the motivation to betray somebody. She seemed to me to be very disarming, very trusting, in fact more so than Rose. Vickie is so open and so vulnerable, I almost felt bad being a psychologist, and subjecting her to the evaluation because with her, even more I had the feeling she was — she was just putty in anybody's hands, and so totally trusting."

(As an indication that such testimony was improper and misleading, we note the clash of "experts" on this matter which was not presented to the jury. Dr. Farrenkopf was describing the same witness whom Dr. Colbach, during the competency hearing and without objection, had described as being not at all credible.)

After allowing Dr. Farrenkopf's testimony, the trial judge instructed the jury as follows:

"Ladies and gentlemen, just before you were sent to the juryroom, an objection was made to a question, and an answer actually was given by a witness. I'm going to do this my way [defense counsel] because I want the record clear. The answer given by the witness related to the capacity of either one of these victims of manufacturing a story. That is in a broad sense. You people are the ones who have to make the determination of whether or not either one of these victims have fabricated a story with respect to defendant in this case. And

you, and you alone, must make that determination. The opinion of an expert, or anyone else cannot be substituted for that obligation of the jurors. Do you understand what I just told you? In other words, you are the ultimate judges of the ultimate facts, very basically, the credibility of the witnesses when they take the stand."

Even though the trial judge attempted to convey to the jurors that they would be the ultimate judges of the credibility of the two young women, he did not instruct the jury to disregard the lengthy testimony by Dr. Farrenkopf. This testimony was critical to the state's case.

This case can be described as a typical "credibility contest." The young women only belatedly complained of sexual abuse by defendant. These complaints were uncorroborated by any witnesses or physical evidence. Defendant vehemently denied any involvement and his credibility was not impeached in any way by the state. The young women were unable to relate any specific time of the alleged assaults, although they did remember certain places and other activities going on at the time. In fact, they could not tie down any time period within a year of any particular event. Defendant's attempt to establish an alibi was frustrated because of the indefiniteness of the time of the assaults. The case centered on the conflict between the word of two severely retarded and vulnerable young women and the testimony of an unimpeached defendant. Dr. Farrenkopf's testimony therefore was pivotal.

■ ■ Defendant's attorney alerted the court at the outset that he would object to any attempt by the state to bolster the testimony of the alleged victims with any form of opinion concerning their credibility.[2] It is apparent from the record that defendant's attorney promptly objected to the testimony

---

[2] "Your Honor, I have been provided a copy of the evaluation by Dr. Farrenkopf, and I know the questions that were asked him include this question: Is Rose being truthful regarding the sexual events? Another question just says, regarding your second question about Rose as a competent and truthful witness. My objection is for this witness to be commenting on the ultimate question in this case, which is whether these witnesses are telling the truth or not. I don't think any witness can testify as to whether another witness, complaining witness is telling the truth, especially as it relates to the third question, is she being truthful regarding the sexual events. Now, there's been a lot of cases in this area, none have gone so far as to say that a psychiatrist can testify that a witness is being truthful.
* * *"

on the basis that witness credibility is an impermissible area of comment by a psychotherapist. That objection should have been sustained. *State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983); *see also State v. Walgraeve,* 243 Or 328, 412 P2d 23, 413 P2d 609 (1966).

We have said before, and we will say it again, but this time with emphasis — we really mean it — *no psychotherapist may render an opinion on whether a witness is credible in any trial conducted in this state.* The assessment of credibility is for the trier of fact and not for psychotherapists.[3] In the case at bar there was a direct disregard of the specific prohibitive statement set forth in *Middleton,* 294 Or at 438: "We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the

---

[3] *State v. Brown,* 297 Or 404, 443, 687 P2d 751 (1984):

"OEC 608 complements and supports the long-standing position of this court that no witness may pass upon the credibility of another witness in respect to specific conduct. In excluding psychiatric testimony as to the truthfulness of witnesses, we said in *State v. Walgraeve,* 243 Or 328, 333, 412 P2d 23, 413 P2d 609 (1966):

" 'The use of psychiatric testimony in the manner urged by the defendant would create a class of cases in which opinion evidence would, in fact, determine the credibility of witnesses. Unless the function of the jury is to find the truth, its role is devoid of substance. Often the jury can meet this obligation only by determining the credibility of witnesses. The jury system with all its imperfections, has served society well. It has not been demonstrated that the art of psychiatry has yet developed into a science so exact as to warrant such a basic intrusion into the jury process.' "

This rule was not changed by our recent decision in *State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983):

" '* * * We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness, although we recognize some jurisdictions accept it.'

"We certainly agree with Judge Irving Kaufman's eloquent statement supporting this position in excluding polygraph in *United States v. Stromberg,* 179 F Supp 278 (SD NY), *reversed in part on other grounds* 268 F2d 256 (2nd Cir 1959):

" '* * * The most important function served by a jury is in bringing its accumulated experience to bear upon witnesses testifying before it, in order to distinguish truth from falsity. Such a process is of enormous complexity, and involves an almost infinite number of variable factors. It is the basic premise of the jury system that twelve men and women can harmonize those variables and decide, with the aid of examination and cross-examination, the truthfulness of a witness. * * * I am not prepared to rule that the jury system is yet outmoded. I still prefer the collective judgment of twelve men and women who have sat through * * * a trial and heard all the evidence on the guilt or innocence of a defendant.' 179 F Supp at 280."

truth." An opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend (to wit: the defendant) is tantamount to the same thing.

On appeal the state does not claim that this testimony was admissible, but only that defendant failed properly to object and protect the record and that any error in receiving the testimony was cured by the trial judge's instruction.

As we said in *State v. Foster,* 296 Or 174, 183, 674 P2d 587 (1983), a defense attorney does not have to walk over any more legal coals to protect the record after first stating the grounds for the objection. His objection that this was an impermissible area of comment by the psychologist was specific. Counsel further enhanced that objection by changing its basis, at the trial judge's suggestion, to object that a proper foundation had not been laid. Defense counsel was right both times — the testimony was impermissible comment, *State v. Middleton, supra,* and, even if it might otherwise have been admissible, there was a failure to lay a proper foundation, *State v. Brown,* 297 Or 404, 687 P2d 751 (1984).

■ Although we do not hold that any form of instruction necessarily would have been sufficient, the instruction by the trial judge in this case was insufficient in that the judge failed to tell the jury to disregard totally the testimony of Dr. Farrenkopf. We suggest in the future that if counsel attempts to elicit similar testimony the trial judge, *sua sponte,* should summarily cut off the inquiry before a jury is contaminated by it. The admission of the testimony constituted prejudicial error and was not "cured" by the instruction.

## SEX ABUSE SYNDROME

Defendant complains that the trial court erroneously allowed a Children's Services Division (CSD) caseworker who was not an expert on mentally defective adults to testify on the way child victims normally react to sexual abuse. The state claims that defendant only objected to this witness's competency to testify as an expert witness and not to the relevance of her area of expertise to the issues at trial. Because this case must be retried, we merely note that we perceive no relevancy to this witness's testimony. She testified as to how normal children usually react to sexual abuse. This case deals with two young adults who have had substantially different

backgrounds and experiences and who are physically and mentally quite dissimilar to any child victims previously encountered by this witness. In *State v. Middleton,* this court allowed in testimony concerning normal reactions to abuse but did so before we decided *State v. Brown.* We have set out in great detail in *Brown,* 297 Or at 409-18, the necessary foundation that must be laid for the introduction of scientific evidence. Without repeating what we said there, we direct the attention of anyone who is offering a form of scientific evidence to the procedures for admission set forth in *Brown.* Here the state made no effort to comply with the requirements set forth in *Brown.*

We note that in *Middleton,* none of the essential information required by *Brown* oor the admission of scientific evidence by an expert was related in the testimony. In *Middleton* the witness was conceded to be an expert. We suggest that in future cases involving "syndrome" testimony full foundations be established, if indeed it can be shown that the so-called "typical" reactions can be demonstrated to be either typical or reliable. *See* McCord, *Syndromes, Profiles and Other Mental Exotica: A New Approach to the Admissibility of Nontraditional Psychological Evidence in Criminal Cases,* 66 Or L Rev 19 (1987).

On retrial, testimony of the CSD worker regarding child abuse victims should be excluded unless relevant and justified by a proper foundation.

## THE INDICTMENTS

■     Finally, defendant complains that the indictments are not specific enough to withstand a demurrer. Although we appreciate the predicament of defendant in this situation, where the events complained of happened sometime within a 21-month time frame, our criminal procedure statutes do not require an indictment to be more specific. An indictment need not allege the specific time an offense was committed unless time is a material element of the offense. ORS 135.717.[4] Time

---

[4] ORS 135.717 provides:

"The precise time at which the offense was committed need not be stated in the accusatory instrument, but it may be alleged to have been committed at any time before the finding thereof and within the time in which an action may be commenced therefor, except where the time is a material element in the offense."

is not a material element of rape or sexual abuse and the trial judge correctly denied defendant's demurrer with respect to the remaining two counts.

## CONCLUSION

We are quite aware of the national trend for courts to allow nontraditional psychological evidence which, while not explicitly directed at witness credibility, does reflect on the credibility of a witness in the case.[5] Nonetheless, the so-called psychological evidence offered in this case is not in an advanced scientific area nor is it even in a gray area. The proffered evidence directly reflected upon the credibility of the testimony of the state's key witnesses, a matter to be assessed by the jury. We reject the legal cliche that the evidence "invaded or usurped" the province of the jury.[6] Nevertheless, the inadmissible testimony was received and the jury heard it. The trial judge did not tell the jury to disregard the expert's opinion. Its admission and the trial judge's failure to instruct the jury to disregard the testimony concerning Dr. Farrenkopf's credibility evaluation of one of the state's key witnesses were reversible errors.

The decision of the Court of Appeals and the judgment of the trial court are reversed, and the case is remanded to the trial court for a new trial.

---

[5] Courts around the nation have addressed the twin issues of the admissibility of evidence and the extent to which an expert can testify concerning the credibility of other witnesses. The Appendix contains a partial listing of these decisions.

[6] The commentary to OEC 704, citing 7 Wigmore § 1920, notes that this argument "is aptly characterized as empty rhetoric."

## APPENDIX

*Hill v. State,* 507 So2d 554 (Ala Crim App 1986).

There is insufficient evidence of the general acceptance in the scientific field of the validity of the battered wife syndrome for testimony concerning the syndrome to be admitted at trial.

*Rodriquez v. State,* 741 P2d 1200 (Alaska 1987).

An expert's testimony regarding common characteristics of exploited children and a conclusion that the victims' behavior was consistent with this pattern, as testimony by an expert which provides useful background information to aid the jury in evaluating the testimony of another witness, is admissible.

*State v. Moran,* 151 Ariz 378, 728 P2d 248 (1986).

Expert testimony describing the general principles of behavior in child abuse situations is admissible. "Once the jury has learned the victim's behavior from the evidence and has heard experts explain why sexual abuse may cause delayed reporting, inconsistency, or recantation, we do not believe the jury needs an expert to explain that the victim's behavior is consistent or inconsistent with the crime having occurred."

*State v. Huey,* 145 Ariz 59, 699 P2d 1290 (1985).

Testimony of psychiatrist who examined rape victim shortly after she escaped from defendant held admissible to show lack of consent. Psychiatrist testified regarding rape trauma syndrome. The court held that if such evidence was properly presented by a person qualified by training and experience such as a psychiatrist or psychologist, it would be admissible to show victim's lack of consent, but suggested that the court would be reluctant to allow such evidence to show that the victim had been raped.

*Poyner v. State,* 288 Ark 402, 705 SW2d 882 (1986).

Evidence of the general behavior of child abuse victims is relevant to explain the conduct of the victims. The expert who testified had a master's degree in school psychology and was a school counselor who had dealt with victims of child abuse; the expert had experiences which went beyond that of the ordinary person and was therefore qualified. In *Russell v. State,* 289 Ark 533, 712 SW2d 916 (1986), the court held that an

expert's testimony concerning the victim's compatibility with the child abuse syndrome was inadmissible because it went to the witness' credibility.

*Johnson v. State,* 732 SW 2d 817 (Ark 1987).

While an expert can offer an opinion of the "ultimate issue" (*see Jennings v. State,* 289 Ark 39, 709 SW 2d 69 (1986)) an expert can not offer an opinion on whether a victim was telling the truth when the only information on which the expert bases his opinion is the "history" given by the victim.

*People v. Bledsoe,* 36 Cal 3d 236, 681 P2d 291 (1984).

Expert testimony regarding emotional symptoms the victim exhibited after alleged rape incident and testimony concerning "rape trauma syndrome" is not admissible to prove that the witness was raped. Applying the test set forth in *Frye v. United States,* 293 F 1013 (DC Cir 1923), the court held that rape trauma syndrome is not used as a scientifically reliable means of proving that a rape in fact occurred. The court contrasted the rape trauma syndrome, which is inadmissible because it was developed to predict emotional reactions, with the battered child syndrome, which is admissible because it was developed as a means to determine that injuries had a specific cause.

*People v. Hampton,* 746 P2d 947 (Colo 1987).

Expert testimony concerning the rape trauma syndrome should not be evaluated under the *Frye* test, but should be admitted if it will assist the trier of fact to understand the evidence or resolve a fact in issue. In the present case, an expert's testimony regarding the general characteristics of rape trauma syndrome was admissible because it helped the jury place the victim's delay in reporting the crime in context. The expert had not examined the complainant and did not express any opinion whether the complainant had been raped or was testifying truthfully.

*Powell v. State,* 527 A2d 276 (Del 1987).

The admission of testimony of the statistical probability of the complainant's veracity was error. The prosecution elicited from an expert on child abuse testimony to the effect that

more than 90 percent of victims reporting such crimes were telling the truth.

*Ibn-Tamas v. United States,* 455 A2d 893 (DC App 1983).

Expert testimony relating to the battered woman syndrome held inadmissible because it does not meet the general acceptance standard of *Frye.*

*Kruse v. State,* 483 S2d 1383 (Fla Dist Ct App 1986).

Expert's testimony on post-traumatic stress syndrome was partially admissible in trial for lewd, lascivious, or indecent assault upon a child in which there was no demonstrable evidence of an assault and defendant denied the allegations. The trial court properly allowed a qualified expert to describe the condition known as post-traumatic stress syndrome and to correlate her observations of the victim's behavior with commonly observed behavior patterns of other syndrome patients. The expert should not have been allowed to testify directly as to the victim's credibility.

*Allison v. State,* 256 Ga 851, 353 SE2d 421 (1987).

An expert can testify as to the existence of the child abuse syndrome and can testify that the victim's behavior is consistent with the syndrome, but the expert cannot testify to the ultimate issue of whether the child was abused.

*Smith v. State,* 247 Ga 354, 291 SE2d 226 (1981).

In adopting the reasoning of Federal Rules of Evidence 704, the court held that because the battered wife syndrome is a matter beyond the ken of the jury, an expert explanation of the syndrome would be helpful to the jury and should be allowed.

*State v. Rodrigues,* 67 Hawaii 70, 679 P2d 615, *cert den and app dismissed* 469 US 1078 (1984).

Expert testimony regarding defendant's multiple personality syndrome held admissible, despite fact that psychiatrist's qualifications and methodology had been called into question. The trier of fact has the discretion to accept or reject the psychiatrist's testimony.

*State v. Kim,* 64 Hawaii 598, 645 P2d 1330 (1982).

After complainant's credibility was placed at issue, expert allowed to testify as to common characteristics of children subject to sexual abuse by family members, to victim's correspondence with these characteristics, and to give expert's opinion as to believability of complainant's testimony.

*People v. Server,* 148 Ill App 888, 499 NE2d 1019 (1986).

The rape trauma syndrome is like other syndromes which are admissible in Illinois. The expert was allowed to testify as to the general recognition of the syndrome and give an opinion that the victim's behavior was not inconsistent with the syndrome. The testimony was admitted on rebuttal for the limited purpose of explaining how victims react.

*Simmons v. State,* 504 NE2d 575 (Ind 1987).

When the victim had given inconsistent statements regarding location of rape, properly qualified psychiatric social workers were allowed to testify as experts that victim's behavior was not inconsistent with rape trauma syndrome. The experts were not asked and did not speak directly to the victim's credibility.

*State v. Myers,* 382 NW2d 91 (Iowa 1986).

Admission of expert testimony that children rarely lie about sexual abuse was unfairly prejudicial to defendant, despite the fact that the expert was in a better position to evaluate the truthfulness of the complainant's allegations and despite the fact that the expert's testimony would be helpful to the jury.

*State v. Marks,* 231 Kan 645, 647 P2d 1292 (1982).

When consent is the defense in a prosecution for rape, qualified expert psychiatric testimony regarding the existence of rape trauma syndrome is relevant and admissible. The expert was allowed to testify that the victim was suffering from the syndrome.

*State v. Bressman,* 236 Kan 296, 689 P2d 901 (1984).

Testimony in a rape trial that, based on past experiences with rape victims, the witness, a hospital physician, believed the complainant had been raped was inadmissible. There had

been no showing of the witness' qualifications to make such a conclusion, and the testimony was not necessary because the jury could have drawn its own conclusions without having the witness pass on the credibility of the complainant. The court distinguished its present ruling from *State v. Marks,* 231 Kan 645, 647 P2d 1292 (1982), which concerned only the question of consent.

*Commonwealth v. Rose,* 725 SW2d 588 (Ky 1987).

Expert testimony on the general characteristic of the battered wife syndrome could have been admitted, but, because the witness was not trained to give a mental diagnosis, the expert's testimony on whether the defendant was suffering from the syndrome was inadmissible. The testimony went beyond expert testimony on the characteristics of the syndrome to the ultimate question of the defendant's state of mind.

*Lantrip v. Commonwealth,* 713 SW2d 816 (Ky 1986).

There is inadequate evidence of the scientific acceptance of the sexual abuse accommodation syndrome for expert testimony on that syndrome to be introduced.

*People v. Pullins,* 145 Mich App 414, 378 NW2d 502 (1985).

Expert testimony concerning the rape trauma syndrome does not pass the *Frye* test for accuracy and is inadmissible to show that rape occurred. Evidence of the victim's trauma is relevant but cannot have the aura of scientific reliability unless the *Frye* test is met. The court noted that it was not expressing an opinion on the admissibility of such evidence when consent was the issue in a rape trial.

*State v. Hall,* 406 NW2d 503 (Minn 1987).

Expert testimony on the identifiable behavioral characteristics of sexually abused children and testimony that a delay in reporting abuse was not unusual when the victim was an adolescent was admissible. Such evidence was helpful to the trier of fact and was not outweighed by any prejudicial effect.

*State v. Saldana,* 324 NW2d 227 (Minn 1982).

Expert testimony concerning the rape trauma syndrome was inadmissible because such testimony was prejudicial and went to the ultimate question of whether the complainant was raped. The expert had testifid about the characteristics typically displayed by sexual assault victims and gave an opinion that the complainant had been raped.

*State v. Taylor,* 663 SW2d 235 (Mo 1984).

Testimony on the rape trauma syndrome is not sufficiently based on scientific technology to be admissible. Such testimony is an implied opinion that the victim was raped, and creates a risk that the jury will regard the opinion as dispositive on the issue of consent. Testimony regarding a stressful sexual encounter in the past does not go to the issue of the actual rape alleged.

*State v. Brodniak,* 718 P2d 322 (Mont 1986).

When consent is the defense in a prosecution for rape, qualified expert testimony regarding the existence of the rape trauma syndrome is admissible. However, expert testimony as to the statistical percentage of false accusations was an improper comment on the credibility of the complainant and should not have been admitted.

*State v. Bowman,* 104 NM 19, 715 P2d 467 (Ct App 1986).

The court assumed, but did not decide in this case, that expert testimony on rape trauma syndrome is admissible. In the present case it was not an abuse of the trial court judge's discretion to refuse to admit expert testimony on the syndrome where the psychologist admitted that other factors might have caused the same symptoms, admitted that his opinion depended on the child's truthfulness, and acknowledged that the procedures were designed for diagnostic purposes, rather than for determining the accuracy of a past event, and where the prosecutor insisted on using the emotion charged terminology of rape trauma syndrome despite the psychologist's preference for the neutral term of post-traumatic stress disorder.

*State v. Staples,* 120 NH 278, 415 P2d 320 (1980).

To counter the defense of fabrication of story, expert testimony that a memory loss of events preceding rape was not unusual among rape victims was allowed to assist jury in understanding complainant's partial memory loss, so long as no expert opinion was given as to the complainant's veracity.

*People v. Reid,* 123 Misc 2d 1084, 475 NYS2d 741 (1984).

In sustaining a pretrial decision to allow expert testimony on the rape trauma syndrome in rebuttal to an anticipated defense of recantation of the accusation, the court held that such testimony was no more inflammatory or intrusive into the province of the jury than other expert testimony. The court noted that the expert's testimony should be limited to explaining the syndrome to the jury and expressing an opinion that the victim suffers from the syndrome. The expert should not be allowed to testify as to whether she believes the witness.

*State v. Goodwin,* 320 NC 147, 357 SE2d 639 (1987).

Licensed clinical social worker with seven and one-half years experience dealing with childhood emotional problems failed to establish training or experience in post-traumatic stress syndrome. Without ruling on the admissibility of the syndrome, the court held that this testimony was inadmissible.

*Commonwealth v. Gallagher,* 353 Pa Super 426, 510 A2d 735 (1986).

Expert testimony was admissible where expert testified to symptoms of rape trauma syndrome, testified that expert believed complainant was suffering from syndrome, and explained how syndrome could have affected ability to identify attacker where identity was an issue in trial. The expert did not state a personal opinion that complainant was telling the truth.

*Commonwealth v. Baldwin,* 348 Pa Super 368, 502 A2d 253 (1985).

Testimony of properly qualified expert concerning psychological dynamics of intra-family sexual abuse and behavioral pattern of victims is admissible because evidence is relevant and is the proper subject for expert testimony. The expert was

allowed to testify concerning the effects on the victim's self-esteem, secrecy and inability to recall details where the direct testimony was in general terms and where delay in reporting and inconsistent statements were in question. The court noted that even when asked on cross-examination the expert refused to express an opinion on the credibility of the particular victim.

*State v. Hudnall,* 293 SC 97, 359 SE2d 59 (1987).

Expert's testimony on the common characteristics of child victims of sexual abuse is inadmissible to show abuse had occurred. Unlike cases where such evidence has been allowed to assist the jury in understanding certain unusual behavior, here the evidence was introduced to show whether the crime had occurred.

*Werner v. State,* 711 SW2d 639 (Tex Crim App 1986).

Expert testimony that defendant was suffering from Holocaust syndrome, which was offered to support defendant's claim that actions were a product of an extremely strong determination to defend self was properly denied admission because it was immaterial. The court held that the direct evidence of the defendant's behavior did not establish that defendant acted under the influence of the syndrome. The dissent contains an extensive discussion of various syndromes recognized by courts.

*United States v. Azure,* 801 F2d 336 (8th Cir 1986).

In some circumstances an expert's testimony on child abuse may be helpful, but it goes too far for the expert to testify on the victim's truthfulness.