Argued and submitted December 16, 2015, reversed and remanded July 6, 2017

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TRAVIS SHAYNE DYE,
*Defendant-Appellant.*

Klamath County Circuit Court
1202081CR; A155696

401 P3d 243

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

With her on the reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Steven T. Wax, Janis C. Puracal, Aliza B. Kaplan, and Oregon Innocence Project and Michael R. Levine, Matthew G. McHenry, and Levine & McHenry LLC filed the briefs *amicus curiae* for Oregon Innocence Project.

Before DeVore, Presiding Judge, and Garrett, Judge, and Duncan, Judge pro tempore.*

* Garrett, J., *vice* Flynn, J. pro tempore.

## DUNCAN, J. pro tempore

Defendant appeals a judgment of conviction on one count of first-degree unlawful sexual penetration, ORS 163.411, for which he received the presumptive sentence of 25 years' imprisonment, ORS 137.700(2)(b)(F). On appeal, defendant argues that the trial court erroneously excluded his proffered expert testimony regarding false memory, and, thereby, undercut his ability to argue that the child complainant's accusations against him were the product of a false memory rather than his abuse. The state does not dispute that the specific part of the expert's testimony that is the subject of defendant's assignment of error—generalized testimony regarding false memory and the circumstances that cause it—would have been admissible if offered independently of the rest of the expert's testimony. But, according to the state, that was not how defendant proffered the testimony. According to the state, the expert's testimony was proffered and rejected *in its entirety*, so defendant cannot now argue on appeal that the court should have admitted a discrete part of his offer of proof. *See Pumpelly v. Reeves*, 273 Or 808, 812, 543 P2d 682 (1975) ("It is well established that when a single offer of proof contains both admissible and inadmissible matter, as in this case, it is not error to reject the entire offer."). Alternatively, the state argues that the exclusion of the testimony was harmless in any event, because defendant was able to make many of the same points about false memory through one of the state's experts.

For the reasons that follow, we agree with defendant that the rule described in *Pumpelly* is inapplicable in this circumstance, because the trial court separately analyzed and ruled on the admissibility of the part of the expert testimony that is the subject of defendant's assignment of error. Because that ruling was incorrect, as the state essentially concedes, and because we conclude that the exclusion of that testimony prejudiced defendant, we reverse his conviction and remand for further proceedings.

## BACKGROUND

Defendant was charged with sexually abusing C, who was 8 years old. At the time of the alleged abuse, C and her mother, AM, lived with defendant's stepbrother, R. The

state presented evidence that, one night, while defendant was staying with them and AM and R were sleeping, defendant put his hand up C's pajama pants and inserted his finger into her vagina.

Defendant's theory of the case was that he touched C's leg to wake her up and that AM, who did not like defendant, had planted a memory of sexual abuse in C through her questioning of C and repeated suggestions about defendant. In support of that theory, defendant intended to offer testimony from Dr. Daniel Reisberg, a professor of cognitive psychology who studies memory. The state filed a motion *in limine* to exclude Reisberg's testimony and requested a hearing under OEC 104 on its admissibility.

At that hearing, Reisberg testified that he had "specialize[d] on the topic of memory and in the last couple of decades * * * been primarily focused on how people remember emotional events that they have experienced in their lives, and with a special focus on the kinds of memories that are likely to be of interest to the justice system." He then testified extensively on the subject of "false memory," which he explained refers to "the situation in which someone might be honestly, sincerely telling you exactly what they remember and so they're not lying, they're telling you what they remember, but at the same time they have it wrong; they are reporting on things that are just different from actual events and so they're not telling you the truth, either." He described, among other things, the circumstances that tend to increase the risk of false memories in children, including the passage of time since the event, improper questioning (leading as opposed to open-ended questions from an adult), repetitive assertions by an adult, particularly a trusted adult ("Mr. Smith hurts little girls"), stereotype induction (whereby an adult characterizes another person, such as "Mr. Smith is a really clumsy man," and then invites a child to comment and contribute to a conversation), a parent convincing a child to lie or adding false details to an actual event, and a parent rewarding or punishing a child for the child's responses.

Reisberg testified that a child's susceptibility to the creation of a false memory under those circumstances

can depend on age. He explained that a preschooler is more susceptible to a "suggestion coming in from the outside," whereas children between seven and nine years old are the most susceptible to false memories created by "means of imagination or inference." "To a large extent, though, by the time a child is 8, perhaps 9, at that point the child's memory for most purposes works about the same way an adult's memory does," but "nobody gets to an age at which they're no longer vulnerable" to false memories. He testified that "the factors are the same" for adults; "I mean, it's a little bit difficult, more difficult, in an adult to plant these memories but, I mean, it's easy to find studies in which with just a little bit of suggestion researchers have gotten 25 and 30 and 40 percent of the people believing in something that never happened at all."

Later in his testimony, Reisberg was asked whether he had reviewed materials regarding defendant's case. He responded that he had reviewed the report of the interview of C conducted by Children At Risk Evaluation Services (CARES) and police reports, had watched the CARES interview, and had seen materials from custody hearings involving C. Reisberg then explained that "there are certainly factors in this case that struck me as sorts of things that have in many, many studies been shown to increase the likelihood of false memories, which would increase my concern about whether this is [sic] might be a false memory." He then proceeded to testify about the particular circumstances that could have contributed to the creation of a false memory in C, including the passage of time between the alleged abuse and documentation of that abuse, the questioning of C by her mother, the possibility of emotional rewards from mother based on C's report, and stereotype induction by C's mother.

After Reisberg finished testifying, the prosecutor argued, among other contentions, that defendant would be unable to establish that any of the high risk circumstances actually existed with regard to C, which the court understood to mean "there's not even going to be a foundation for these high risk circumstances or circumstances that create a high risk[.]" The prosecutor further represented that another district attorney from her office had "contacted the

different District Attorney's offices throughout the State to check on whether or not Dr. Reisberg had been allowed to testify in different counties," and that, "basically, every time this memo has been filed, the Court has excluded the testimony. So the Court has not allowed his testimony to come in because it's basically backdoor vouching."[1]

After further argument by the parties, and the prosecutor's statement that "this really does come down to vouching" under cases like *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), the court engaged in the following colloquy with the parties, identifying a distinction between generalized testimony and case-specific testimony by Reisberg:

> "THE COURT: And so the other question I had is, *I looked back at 8:17 and we had a big shift of the gears, at least by that clock, because he went from general information regarding factors that I'm sure defense would say a jury ought to be able to consider those factors or circumstances that lead to high risk, the jury can then hear from mom, put all this together and decide—* * * *
>
> "* * * * *
>
> "* * * *So the question—right, so the question is, do you think that [line] is meaningful because there was a transition from, in general, I'd like to educate—and I'm putting words in his mouth—I want to educate the jury to this problem, I'm going to educate them to the circumstances that create high risk*; I'm done, I'm not going to talk about what I reviewed in the police report or the transcript or anything that might have been said during the domestic relations case, and *I'm just going to leave it at that and they're going to be armed with these things they can consider, they can*

---

[1] The court had previously inquired whether Reisberg had been allowed to testify in sexual abuse cases like defendant's. Reisberg responded that "[i]t's very routine," and he was cross-examined by the prosecutor regarding his familiarity with the Supreme Court's decision in *State v. Southard*, 347 Or 127, 140-42, 218 P3d 104 (2009) in which the Supreme Court held that a medical diagnosis of child sexual abuse is inadmissible under OEC 403 in the absence of physical evidence, because it poses the risk that "the jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible." Reisberg testified that "since *Southard* I have routinely been given very careful instructions by a judge making, so that the judge makes sure I understand the limits of vouching. I certainly had counsel object to questions that came to [*sic*] close to my vouching, but I've certainly been around to testify."

*couple that with the evidence, and I've given them some tools. What's the problem with that?"*

(Emphases added.)

The prosecutor responded that Reisberg would not be allowed to discuss the underlying studies because they were hearsay; thus, he could testify "there is a thing such as false memory but he really can't explain where that comes from." For that reason, she argued, such testimony—including about the risk factors—"is not helpful to the trier of fact at all. That is scientific evidence that is highly prejudicial."

After further arguments from counsel, and a discussion of the case law on vouching for the credibility of other witnesses, defense counsel explained that "what Dr. Reisberg offers is tools for the jury to use, and I believe they're tools that the average juror doesn't know about and doesn't understand." Defense counsel explained that, contrary to the prosecutor's representations, foundational evidence regarding the risk factors surrounding C's memories would be elicited at trial, including through police reports and the testimony of C's mother.

Because it harbored concerns about the existence of that foundational evidence, the court postponed ruling on the admissibility of Reisberg's testimony until after C's mother had testified. C's mother testified the following morning, and the court then revisited the admissibility of Reisberg's testimony. As it had done the previous day, the court explicitly divided Reisberg's testimony into two parts: generalized testimony about false memory (before 8:17 p.m.) and case-specific testimony (after 8:17 p.m.). Because the nature of the court's ruling is central to our resolution of this appeal, we quote it at length:

*"And I'm going to divide this, and I, I think you guys were following me last evening when I said I think we got kind of above the line, meaning before 8:17 p.m. and below the line testimony.* The above the line testimony is arguably very general and does not necessarily, although I think that's debatable, go to the facts and circumstances of this case or the victim in this case, and I'll tie this in momentarily. And when I say that, I think there is an extremely strong

argument that we're doing it by implication, even if we say that it doesn't go directly—but let's assume for the sake of argument that it's just very general information. *I think there's a a strong argument that it would be irrelevant if we say that and we mean that, that it's just very general and really isn't going to assist the jury.*

"*To the extent that it does assist the jury, my view is—and this is kind of [defense counsel's] toolbox argument—that it likely either supplants or greatly supplements the instruction that is routinely given to assist the jury with evaluating witness credibility.* And I'm uncomfortable with that; I don't know that that answers the legal issue entirely, but to that extent I just really don't like the tools argument, that we're simply giving the jury more tools by which they can evaluate witness testimony or credibility.

"But I just am having great difficulty with the direct—and I realize the [decision in *State v. Remme*, 173 Or App 546, 23 P3d 374 (2001)] I think in particular breaks down this direct and indirect commentary on whether or not a witness is answering a penultimate versus an ultimate question. *And in this case I think that distinction would be disingenuous, so I think we still need to talk about the evidence in its entirety, whether we're talking about trying to greatly limit this expert's testimony to what I refer to as the above the line, before 8:17 p.m. information.* And my view is when the exact same line of cases that we started with [regarding vouching]. * * * I think that where we're left with false memory testimony is that we are directly commenting by one witness to the jury on whether or not this particular witness is telling the truth in this case."

(Emphases added.) Accordingly, the court excluded Reisberg's entire testimony.

Defendant was subsequently found guilty of one count of first-degree unlawful sexual penetration and one count of first-degree sexual abuse, each by a nonunanimous verdict. In the sentencing hearing that followed, the subject of Reisberg's testimony came up once again. Defense counsel explained that she had tried to verify the state's representation to the court during the OEC 104 hearing that Reisberg's testimony had been excluded in numerous counties, but that she was unable to do so. She asked the court to order the state to disclose the source of that representation

for the record. At that point, the prosecutor admitted that she had been wrong and that "Dr. Reisberg had been limited in his ability to testify but not completely excluded." She explained that another district attorney from her office subsequently told her that "I've been talking to these prosecutors and they're telling me what the judges have let them do is talk about false memories in general, not specific to the victim." But, the prosecutor argued, the court's ruling was nonetheless correct in light of *Southard*.

After that revelation, the trial court responded:

> "[I]t shocks me that that sort of evidence would come in. Because my view is if that comes in, polygraphs come in, it all comes in. And basically, we just set up a number of experts who are going to interview everybody involved in the case and determine whether they're being honest or not. And that was really the basis of my decision, is it was very counter-intuitive to me that that sort of evidence could come in. And looking at the cases I had in front of me, I couldn't support, but we'll see what the Court of Appeals does with it."

The court then merged the two guilty verdicts into a single conviction for first-degree sexual penetration, and it sentenced defendant to the presumptive sentence of 25 years in prison.

## ANALYSIS

On appeal, defendant's first assignment of error is directed at the court's exclusion of Reisberg's testimony "concerning the concept of false memories in general and the circumstances that increase the risk of creating a false memory"—or, what the trial court described as the testimony before 8:17 p.m. As noted at the outset of this opinion, the state's primary response is based on the rule described in *Pumpelly*, and in cases like *State v. Tiner*, 340 Or 551, 557, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007), that, "when a single offer of proof contains admissible and inadmissible evidence, the trial court does not err if it rejects the entire offer." In the state's view, the "*Pumpelly* rule" governs this case, because defendant made a single offer of proof and the court rejected the evidence in its entirety.

We agree with defendant that the state's reliance on the *Pumpelly* rule is misplaced in these circumstances. That rule, which concerns offers of proof, serves many of the same goals as the principles underlying preservation of error: to ensure that the opposing party and the trial court have an opportunity to address the admissibility of the evidence, or category of evidence, at issue, and to ensure that the record is adequate for appellate review. *See State v. Ryel*, 182 Or App 423, 434-35, 51 P3d 8 (2002), *rev den*, 335 Or 255 (2003) (describing requirement of separate offer of proof and explaining that one purpose of an offer of proof is to ensure "that the trial court can make an informed decision," and another purpose "is to provide a record on review"(internal quotation marks and citation omitted)); *State v. Babson*, 249 Or App 278, 292-93, 279 P3d 222 (2012), *aff'd*, 355 Or 383, 326 P3d 559 (2014) (stating that the purposes of an offer of proof are "to provide the trial court with the information it needs in order to determine the merits of the objection and to permit this court to review the trial court's decision").[2]

In most cases, those underlying principles will not be served unless the proponent of the evidence divides the offer of proof into its separate parts, because the court "is under no duty to sort out the admissible matter, but can properly reject the whole offer where any part is incompetent." *State v. Howard*, 49 Or App 391, 398, 619 P2d 943 (1980); *see also Heise et ux v. Pilot Rock Lbr. Co.*, 222 Or 78, 100, 352 P2d 1072 (1960) (holding that the defendant's statement that several exhibits were offered "severally and collectively" did not sufficiently divide the offer of proof for purposes of the rule; "[t]o so hold would violate the reason for the rule for the trial court could then be required to separate the wheat from the chaff"). However, the same cannot be said when, upon receiving an offer of proof, the trial court itself divides the offer into parts, invites argument about that division, and then actually rules on the

---

[2] *See also, e.g., State v. Sarich*, 352 Or 601, 618, 291 P3d 647 (2012) (explaining that, "when a party offers evidence as a whole and the evidence is rejected by the trial court, the appellate court will affirm the trial court's ruling if any part of the evidence is inadmissible," and quoting *State v. Jones*, 339 Or 438, 441, 121 P3d 657 (2005), for the proposition that the proffering party "'bore the burden to preserve for appeal any alternative argument supporting the admissibility of any part of the evidence'").

admissibility of the constituent parts. In that circumstance, the court has "the ability to make the informed ruling that the consideration of an offer of proof requires." *Ryel*, 182 Or App at 435.

That is the case here. Although defendant did not initially distinguish between the proffer of generalized testimony on false memory and case-specific testimony, the court drew that distinction and asked the prosecutor to respond to it. Thereafter, in issuing its ruling, the court explicitly stated that it would "divide this" between Reisberg's generalized testimony and case-specific testimony, and the court proceeded to analyze the admissibility question along those lines.

The court began its analysis by stating that the generalized testimony would arguably be too general to assist the jury, and it then stated that, to the "extent that it does assist the jury, my view is—and this is kind of [defense counsel's] toolbox argument—that it likely either supplants or greatly supplements the instruction that is routinely given to assist the jury with evaluating witness credibility." The court was "uncomfortable with that" but did not "know that that answers the legal issue entirely."

From there, the court referred to the distinction between comments on the "ultimate" and "penultimate" question of credibility of witnesses, referring to our decision in *Remme*. For context, *Remme* attempted to reconcile three Supreme Court cases concerning permissible and impermissible expert testimony bearing on the credibility of witnesses—*State v. Keller*, 315 Or 273, 844 P2d 195 (1993), *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988), and *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983). In *Remme*, we explained that "[t]he line, albeit fine, is principled" between the three cases. 173 Or App at 562. All three cases "preclude an expert from explicitly stating that he or she believes that the witness/complainant is truthful. That is, they agree that that 'ultimate' question cannot be answered." *Id.* Where they differ, we reasoned, "is in their treatment of the 'penultimate' question—*i.e.*, the expression of an opinion as to whether the specific complainant's account comports with more general phenomena or dynamics bearing on credibility. *Middleton*

allows the expert to 'connect that dot'; *Milbradt* and *Keller* do not." *Remme*, 173 Or App at 562.

In this case, the trial court ruled that "that distinction"—*i.e.*, between a penultimate question and the ultimate question—"would be disingenuous, so I think we still need to talk about the evidence in its entirety, whether we're talking about trying to greatly limit this expert's testimony to what I refer to as the above the line, before 8:17 p.m. information." In other words, the trial court did not exclude Reisberg's testimony because it was offered in its entirety; rather, the court *discussed* the evidence "in its entirety" because it concluded, as a matter of law, that there was no meaningful difference between the generalized testimony and the case-specific testimony. That legal issue—whether the outcome should be different with regard to admissibility of generalized testimony—is the same issue that is presented by defendant's first assignment of error. Thus, it is properly before us, notwithstanding the fact that the court, rather than defendant, first drew the distinction between generalized testimony on false memory and case-specific testimony. *See State v. Smith*, 252 Or App 707, 714, 288 P3d 974 (2012), *rev den*, 353 Or 429 (2013) (holding that an issue was preserved where, "given the court's and the parties' awareness of the precise issue that defendant articulates on appeal, there is no indication that development of the record was impaired because the court, rather than defendant, raised the issue").[3]

Thus, we turn to the merits of defendant's first assignment of error. As noted, the state essentially concedes on appeal that Reisberg's generalized testimony on false memory was admissible. That concession is well taken. In *State v. Beauvais*, 357 Or 524, 354 P3d 680 (2015), which was decided after this case was tried, the Supreme Court

---

[3] We note that the colloquy at sentencing regarding Reisberg's testimony, albeit after the fact, reinforces our conclusion that neither the state nor the trial court would be surprised by defendant's present contention that the generalized testimony should have been admitted. The prosecutor, after explaining that she had misstated whether other trial courts had excluded Reisberg's generalized testimony on false memory, argued that the earlier ruling was nonetheless correct under *Southard*. The court's response to the prosecutor's revelation indicates that the court had understood the distinction between generalized and case-specific testimony but was not persuaded that it was material under existing Oregon law.

addressed what types of statements, though falling short of direct comments on the credibility of a witness, are nevertheless "tantamount" to vouching. After discussing the same three cases that we considered in *Remme—Keller, Milbradt,* and *Middleton*—the court explained:

> "Admittedly, it is not always easy to draw the line between an inadmissible statement that is tantamount to a direct comment on the credibility of a witness and an admissible statement that is relevant for a different reason but that tends to show that a witness is telling the truth. However, that difference is not all that distinguishes *Middleton* from *Milbradt* and *Keller.* As important was the fact that this court deemed the recantation in *Middleton* to be sufficiently beyond the ordinary experience of a lay finder of fact such that expert testimony would 'explain[] *** superficially bizarre behavior by identifying its emotional antecedents.' *Middleton,* 294 Or at 436; *see also id.* at 437 (testimony was admissible because it would help jury 'make a more informed decision in evaluating the credibility of a testifying child'). No similar assistance was provided either in *Milbradt* or *Keller,* where this court implicitly decided that the credibility determination was not sufficiently complex to conclude that expert testimony would assist, rather than impermissibly influence, the jury in making its own assessment.

> "In short, our prior decisions stand for the proposition that, to be admissible, expert testimony must assist—not undermine—the jury's own assessment of witness credibility. Expert testimony that provides jurors with useful information in making their own credibility assessment ordinarily is admissible, as long as it is not either a direct comment on the credibility of a witness or tantamount to a direct comment on the credibility of a witness. Consistently with that principle, this court stated in [*State v. Lupoli,* 348 Or 346, 234 P3d 117 (2010),] that an expert witness ordinarily can describe the subsidiary principles—that is, the evaluative criteria—underlying an admissible diagnosis of child sexual abuse. *Lupoli,* 348 Or at 361. Those criteria include the general characteristics that the expert looks for in examining a child for sexual abuse and necessarily include characteristics that permit the expert to assess the validity of the allegation. *See id.* at 362."

*Beauvais,* 357 Or at 545-46 (footnote omitted).

Reisberg's generalized testimony about false memory, and the circumstances that cause it, satisfy the prerequisites for admissibility described in *Beauvais* and other Oregon cases. First, the phenomenon of false memory, and the circumstances that can contribute to the creation of a false memory, are complex and beyond the experience of ordinary jurors, such that Reisberg's testimony would assist the jury in understanding that concept for purposes of making its own credibility determination. *See State v. Gherasim,* 329 Or 188, 198, 985 P2d 1267 (1999) (holding that the trial court erred in excluding an expert's testimony that "the victim suffered from dissociative amnesia and that that condition affected her capacity to remember what had occurred on the night that she was assaulted"); *accord Jenkins v. Com.,* 308 SW3d 704, 713 (Ky 2010) (collecting cases regarding expert testimony on suggestive interviewing techniques concerning children and concluding, "as have many of our sister states, that the testimony would assist the trier of fact, as the theories and principles are not within the knowledge of the average juror").

Second, generalized testimony about false memory and factors relevant to the creation of false memories is not a direct comment on the credibility of C or tantamount to it. Rather, the testimony is analogous to the evidence in cases in which experts have been permitted to describe general phenomena or dynamics bearing on credibility, or to pose an alternative explanation for a witness's perceptions. *See Thoens v. Safeco Ins. Co. of Oregon,* 272 Or App 512, 523-24, 356 P3d 91 (2015) (expert testimony that the "plaintiff's physiological complaints were psychological or emotional—rather than anatomical—in origin" did not "violate the long-standing rule in Oregon courts that one witness may not comment on the credibility of another"; "[t]estimony is not inadmissible solely because it calls into question whether the trial testimony or earlier statement of another witness may not be reliable, or because it offers an alternative explanation for a witness's perception—including a perception of pain"); *Remme,* 173 Or App at 562 (testimony by a social worker was admissible to describe the reaction of a typical child victim of familial sexual abuse, including the phenomenon of recantation; stating that "[t]he jury's function is not

impinged upon when expert testimony does no more than provide jurors with useful, nonconclusive information from which *inferences* as to credibility. *may* be drawn." (Emphasis in original.)); *see also Lupoli*, 348 Or at 362 (reasoning that expert testimony stating that a complainant's statements were "developmentally appropriate for her age is the kind of expert opinion that can assist a jury and ordinarily would be admissible"). In fact, in *Beauvais*, the court stated that, "[o]rdinarily, general descriptions of 'the circumstances that can point to a child's suggestibility or the possibility that the child has been coached' are the types of expert opinions that would assist the jury and are not impermissible vouching." 357 Or at 548 (quoting *Lupoli*, 348 Or at 362).

In light of that case law, the trial court erred in excluding Reisberg's generalized testimony on the grounds that it would have been unhelpful to the jury or, if helpful, would have supplanted the jury's credibility determination. It also erred in excluding the testimony on the ground that it amounted to a comment on the credibility of C; Reisberg's testimony would have assisted the jury in making its own credibility determination regarding C's testimony, and it was admissible for that purpose.[4]

We turn, then, to the state's alternative argument that the exclusion of Reisberg's generalized testimony about false memories was harmless. *See* OEC 103(1) ("Evidential error is not presumed to be prejudicial."); *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (in reviewing for harmless error, the question is whether "there was little likelihood that the erroneous exclusion of the witness statements affected the jury's verdict"). The argument merits only brief discussion. According to the state, defendant was not prejudiced by the exclusion of his own expert testimony "because he was able to elicit from one of the state's experts the same general information about false memory." In short, we agree with defendant that the limited testimony on false memory

---

[4] The state, in a footnote, suggests that Reisberg's testimony included hearsay—descriptions and explanations of other experts' studies that he had read—and that the court could have excluded the entire offer for that reason. Suffice it to say that there is no indication that the court would have excluded the testimony on that ground; in fact, the court told defense counsel not to address the state's hearsay argument and said that it was "not concerned with it."

elicited from the state's expert—the CARES examiner who interviewed C—was not an adequate substitute for a fuller description by a professor of cognitive psychology concerning false memory and the circumstances that tend to create a higher risk of that phenomenon.[5] The issue of false memory and the circumstances that cause it went to the heart of defendant's theory of the case, and his presentation of his defense was prejudiced by the exclusion of Reisberg's testimony on that subject. We therefore reverse and remand.[6]

Reversed and remanded.

---

[5] In fact, when defendant's counsel attempted to refer to the CARES examiner's statements on false memory during closing argument, the prosecutor objected on the ground that "I don't recall her talking about false negative memories, in fact, she's not an expert on that."

[6] Because we reverse and remand, we do not reach defendant's remaining assignments of error, which concern the proportionality of his sentence and the constitutionality of his convictions on nonunanimous verdicts.