86 April 1, 2026 No. 235

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

BRYON LLOYD AKINS,
*Petitioner-Appellant,*

*v.*

Jamie MILLER,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
22CV30289; A184076

J. Burdette Pratt, Senior Judge.

Argued and submitted March 5, 2026.

Margaret Huntington argued the cause for appellant. Also on the briefs was Equal Justice Law. Bryon Akins filed the supplemental reply brief *pro se*.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Petitioner appeals a judgment denying post-conviction relief from convictions of unlawful sexual penetration and sexual abuse. Petitioner was charged with sexually touching two sisters, the granddaughters of petitioner's wife, on several occasions, including when they were sitting on his lap on a family boat ride and riding a lawnmower in front of other family members, including the children's parents. On appeal, petitioner raises six assignments of error, contending that the post-conviction court erred by denying relief on his inadequate assistance of counsel claims. Because petitioner's first assignment of error, regarding counsel's failure to consult a memory expert, is dispositive, we address only that assignment of error and reverse and remand.

We review a post-conviction court's grant or denial of relief for legal error, accepting the court's implicit and explicit factual findings if there is evidence to support them. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). To be entitled to post-conviction relief, under the state and federal constitutions, petitioner must demonstrate both that counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result. *See McMullin v. Amsberry*, 310 Or App 542, 551, 485 P3d 278 (2021) (explaining that the state and federal tests for reviewing inadequate/ineffective assistance of counsel claims are "functionally equivalent").

In petitioner's first assignment of error, he contends that the post-conviction court erred in denying his claim of ineffective assistance of counsel for defense counsel's failure to consult a memory expert. The defense theory of the case was that the sexual abuse had not occurred, meaning either that the children lied or their memories had been contaminated by repeated improper questioning by family members and each other. Petitioner argues that consultation with a memory expert was necessary to support such an argument. The state responds that counsel did not act unreasonably in failing to retain a memory expert because memory contamination was adequately addressed through cross-examination of the CARES forensic interviewer and

the children's relatives. Further, counsel considered consulting an expert and determined it was not necessary.

Here, counsel engaged in some investigation and contemplated some potential costs and benefits. Counsel reviewed the children's disclosures, "including the CARES interviews, for discrepancies, inconsistencies, and signs that the victims had been influenced by their parents and grandmother." Counsel identified two issues: (1) that the children told nearly identical stories and (2) that the children had been questioned together by their parents and grandmother prior to the CARES forensic interview. From that review, counsel determined that an expert was not necessary because the issues appeared to be able to "be easily grasped by a jury using common sense" and were "not complex." Counsel elicited testimony on cross that addressed some of the same information a memory expert could have provided—that older children and even adults are susceptible to memory contamination, the number of times a child hears something makes them more likely to be suggestible, initially using open-ended questions reduces suggestibility, and that interviewing children separately reduces the likelihood of memory contamination.

Ultimately, however, counsel's tactical decision was not based in a reasonable assessment of the costs and benefits of consulting a memory expert. "Tactical decisions, to be considered an exercise of professional skill and judgment, must be grounded on a reasonable investigation and should include an evaluation of the likely costs and potential benefits of the contemplated action, as measured in light of the nature and complexity of the case." *Farmer v. Premo*, 363 Or 679, 690, 472 P3d 170 (2018) (internal quotation marks and citations omitted) (counsel failed to exercise required professional skill and judgment when she failed to consider "the different nature and greater strength" of a different expert's testimony). Because counsel relied largely on her own experience, she decided not to retain an expert without adequately assessing the costs and benefits of that choice. *See McMullin*, 310 Or App at 558 (counsel's failure to fully consult with scientific experts and consultation with two lawyers experienced on the issue was not sufficient basis to make

an informed decision on cross-examining state's expert); *see also Gorham v. Thompson*, 332 Or 560, 568, 34 P3d 161 (2001) (trial counsel's consultation with memory expert in sex abuse case from petitioner's previous trial months earlier that resulted in a mistrial was sufficient investigation to support decision not to retain expert where no change in the case would have required new investigation). According to the evidence presented to the post-conviction court, the expert would have addressed additional evidence that counsel did not investigate or consider in her decision not to consult an expert, including the potential influence of learning of the children's cousin's experience of sexual abuse when they first told her their account and how the sparse nature of A's account may have indicated memory contamination. Further and most critically, a memory expert would have provided necessary context about the creation of false or contaminated memories. *See State v. Dye*, 286 Or App 626, 639, 401 P3d 243 (2017) ("[T]he phenomenon of false memory, and the circumstances that can contribute to the creation of a false memory, are complex and beyond the experience of ordinary jurors."). Unlike testimony elicited on cross, a memory expert would have been able to testify about the process of false memory creation, such as explaining that sparse memories are more likely to be created and that it is more common and requires less influence to adjust an existing memory. That was particularly critical here, as the only defense theory was that the children were mistaken in their recollection. As such, defense counsel did not exercise required professional skill and judgment by not consulting a memory expert.

In order to warrant reversal, there must be "more than a mere possibility that competent counsel could have used the information that counsel failed to uncover or understand in a way that could have tended to affect the outcome of trial." *Farmer*, 363 Or at 700 (internal quotation marks omitted). The defense's central theory was that the sexual abuse "did not happen because of the implausibility of the abuse happening in front of family members on a small, contained boat, the lack of physical evidence, and the petitioner's denials." Defense counsel's theory of the case left open to jury interpretation any reason as to why the children

accused petitioner. The prosecutor raised that issue during closing argument and focused on discrediting the implication that the children lied:

> "[T]he evidence in this case shows a complete lack of motive on behalf of either of these children to make this, or anything like this, up, let alone against someone that everybody loved."

Defense counsel never responded to that assertion. Indeed, she waived her opening statement and did not present any witnesses. During cross-examination of the CARES forensic interviewer, counsel elicited that "[e]ven adults could be suggestible," that the number of times a child heard or was asked about something "could be a reason" for suggestibility, that the interviewer "would never start an interview" with a specific leading question, and that "part of the reason" CARES interviewers interview children separately is to avoid "taint[ing] the interview of the second child." In her short closing argument, in contrast to the state's argument, defense counsel focused on the implausibility of the abuse occurring in close proximity to the sisters' parents and also briefly referenced evidence related to memory contamination, like the multiple, repeated interviews by relatives, identical accounts of abuse, and the children conferring with each other, rather than implying that the children intentionally lied. Counsel did not discuss how that questioning could have impacted the children's memories.

Given the evidence presented at trial, there is more than a mere possibility that information uncovered by consulting an expert would have impacted the outcome. During the post-conviction proceeding, petitioner presented an expert report and testimony as evidence that an expert would have testified more fully to the likelihood of memory contamination, including the potential impact of the relative's disclosure of sexual abuse to the children, how the sparse nature of one of A's account could indicate memory contamination, the greater likelihood of contamination of existing memories compared to the full creation of false memories, and the specific statistical likelihood and long-lasting impact of memory error after repeated, leading questions. Consultation with an expert could have allowed

counsel to argue that A's lack of detail could have indicated a false memory because traumatic memories tend to be remembered more clearly, and memory errors are more commonly associated with underlying true events, such as a child sitting on an adult's lap, than wholly created events. The expert could have pointed out that the CARES interviewer underused the disclosure history in this case and failed to follow up "I don't remember" answers to determine if A truly did not remember or if A was unwilling or unable to talk about what happened. An expert also would have provided necessary context for how to evaluate evidence of memory contamination, explaining not just what errors occurred but how those errors were likely to impact the children's accounts.

The state contends that the information defense counsel elicited on cross sufficiently addressed memory contamination because it encompassed some of the same information that a memory expert could have provided—that older children and even adults are susceptible to memory contamination, that the number of times a child hears something makes them more likely to be suggestible, that initially using open-ended questions reduces suggestibility, and that interviewing children separately reduces the likelihood of memory contamination. However, for a jury to understand such evidence, consultation with a memory expert was necessary in this case. *Dye*, 286 Or App at 640-41 ("[L]imited testimony on false memory elicited from the state's expert—the CARES examiner who interviewed [the victim]—was not an adequate substitute for a fuller description by a professor of cognitive psychology concerning false memory and the circumstances that tend to create a higher risk of that phenomenon."). While cross-examining the state's witnesses allowed counsel to draw out some of the potential issues with the questioning methods applied, it did not address why or to what extent those issues mattered to the accuracy of the children's accounts. Because memory contamination went to defense counsel's central argument and an expert would have provided distinct evidence concerning memory contamination that would have better informed the jury, there is more than a mere possibility that the outcome would have been different if a memory expert

had been consulted. *See Running v. Kelly*, 306 Or App 589, 602, 475 P3d 450 (2020), *rev den*, 368 Or 273 (2021) (petitioner prejudiced by exclusion of expert testimony where testimony would have given context that would have rebutted prosecutor's central argument).

Reversed and remanded.